MADDEN ET AL., BOARD OF COUNTY COMMRS. OF SUMMIT
COUNTY, APPELLANTS, *v.* BOWER, AUDITOR OF SUMMIT
COUNTY, APPELLEE.

[Cite as Madden v. Bower, 20 Ohio St. 2d 135.]

(No. 69-393—Decided December 23, 1969.)

*Mr. John D. Smith*, for appellants.
*Mr. William R. Moore, Jr.*, for appellee.

SCHNEIDER, J. For the reason that the respondent did not institute a cross-appeal to this court, we are not confronted in this appeal with the question which was determined adversely to him by the court below. That question was: Does Section 20, Article II of the Ohio Constitution, prevent an elected county officer (as distinguished from a county employee) from receiving the benefit of a health insurance plan which was purchased from public funds for his benefit after the commencement of the term for which he was elected or appointed?

Consequently, the sole question before us is whether the respondent county auditor has a duty to charge each special fund of the county from which certain employees are regularly compensated with a proportionate share of the insurance premium cost attributable to those employees.

At the outset, we are compelled to the conclusion that, as to each employee receiving the right to the benefits of the insurance, the premium is a part of the cost of the public service performed by such employee.

The purpose of an employer, whether public or private, in extending "fringe benefits" to an employee is to induce that employee to continue his current employment. If inducement to continue public service could not be found in the provisions of former Revised Code Section 305.171,

the public purpose of payments thereunder would be highly suspect, if not flatly unconstitutional.

It is unnecessary to consider whether the premium constitutes "compensation" within the purview of those statutes which confer upon the various county officers the right to fix the compensation of each of their deputies, assistants and other employees. See, for example, Revised Code Sections 309.06, 313.05 and 325.17. No question is raised as to the authority of a board of county commissioners to purchase insurance for *all* county employees without the consent of, and even against the wishes of, their respective superiors. That authority appears from the plain words of the statute.

However, a solution to the main problem at hand cannot be extracted merely from the four corners of former Revised Code Section 305.171. Necessarily involved is a consideration of those special funds of the county, the receipts and expenditures of which are commanded by law, as distinguished from those funds which are under the control, more or less, of the Board of County Commissioners as the taxing and appropriating authority of the county. See Revised Code Sections 5705.01 *et seq.* No detailed enumeration of the various county funds has been offered by either party, and we attempt none.

We note, however, that Revised Code Section 5555.92 commands each board of county commissioners to establish a county road maintenance and repair fund with certain preferred levies. We note further that Revised Code Section 315.10 requires certain employees of a county engineer to be employed in road maintenance and repair work and to be compensated from that fund. Necessarily, that portion of the premium cost attributable to such employees, as well as to such employees as are engaged in the construction and improvement of county roads and bridges, the cost of which is provided by the funds established by Revised Code Sections 4501.04 and 5735.27, is a part of the cost of the services rendered by such employees in the furtherance of the purposes for which those statutes were en-

acted and for which those funds were established and are maintained.

Finally, we note that Revised Code Section 5705.05 excludes "the construction, reconstruction, resurfacing, or repair of roads and bridges in counties" from the "purpose and intent of the general levy for current expenses," the proceeds of which, in turn, constitute the general fund, and from which the funds prescribed by Revised Code Sections 4501.04 and 5735.27 are, in turn, excluded by Revised Code Section 5705.10. Accordingly, the premium attributable to the class of employees mentioned must be paid from those special funds and the county auditor has a duty to see that the premium cost is so apportioned. As to such employees, we reverse and allow the writ as prayed for.

On the other hand, the statutory provisions for funding the *office* of the county engineer furnishes an example of the distinction suggested. Revised Code Section 315.-12(A) provides that "two-thirds of the cost of operation of the office of county engineer . . . shall be paid out of the county's share of the fund derived from the receipts for motor vehicle licenses . . . and from the county's share of the fund derived from the motor vehicle fuel tax . . . ."

It is readily apparent, if not obvious, that the premium cost paid on behalf of employees of the *office* of the county engineer as an incentive to continue their public service is part of the total cost of operation of that *office*, two-thirds of which total cost must be paid as directed by the statute. Neither the county auditor nor the board of county commissioners has any discretion in the matter.

On the other hand, Revised Code Section 315.12 does not prevent the remaining one-third of the total cost of operation of that *office*, with certain exceptions, from being paid from the motor vehicle fuel and license tax funds. *Bd. of County Commrs.* v. *Budget Comm.*, 17 Ohio St. 2d 39. But, the authority to make the choice as to whether one-third of the total cost of operation of that *office* is to be paid from those funds, from special road levy funds, or from the county general fund, as well as to make appro-

priations from those funds within the limits otherwise prescribed by law,[2] is lodged in the board, not the county auditor, by virtue of Revised Code Sections 5705.01 *et seq.* See, also, Revised Code Sections 5553.01 *et seq.*, and 5555.01 *et seq.*

The record here indicates only that the board of county commissioners has "requested" the county auditor to apportion the premium cost among the various unidentified special funds and the general fund. The resolution of the board adopting the insurance plan contains no appropriation from any fund. We are not informed as to the fund from which the board has provided for one-third of the operation of the county engineer's *office*. Therefore, a charge to any fund, general or special, by the auditor, on account of the premiums attributable to employees of that *office*, on his own volition or at the mere "request" of the board would amount to an appropriation by the auditor which he is unauthorized to undertake. In the absence of an appropriation by the board of county commissioners, the auditor has no duty to apportion the premium cost among the various funds of the county, except as heretofore indicated. Thus, as to the premium attributable to employees of the engineer's *office*, we affirm the judgment of the

---

[2]We are not to be understood as saying here, or in the case of *Bd. of County Commrs.* v. *Budget Comm.*, 17 Ohio St. 2d 39, that a board of county commissioners may ignore the fact that certain duties of the county engineer, the cost of which is necessarily included in the cost of operation of his office and hence would appear in his budget for that office, involve functions unrelated to the planning, construction, improvement or repair of roads, streets and highways. These "non-highway" duties include supervision of such county functions as surveying and tax-map drafting and assistance to the board in connection with such improvements as waste disposal works, ditches, sanitary sewers, storm drainage works and sidewalks. The list is not intended to be exhaustive.

Thus, the provisions of Revised Code Sections 4501.04 and 5735.27, as well as Section 5a, Article XII of the Ohio Constitution, must be adhered to in appropriating "road tax" funds to defray the remaining one-third of the cost of the office of the engineer.

Nothing in our opinion is to be construed as deciding any of the problems suggested by the foregoing.

Court of Appeals in denying the writ for the reasons indicated.

The petition also refers specifically to employees of the Child Welfare Department, the Board of Mental Retardation, the county hospital, the Welfare Department, and the Soldiers' Relief Commission. As to all but the last named, we are equally unable to resolve the question presented for the reason that all of these functions are supportable in whole or in part from the general fund. But, we are not informed in this case whether, or to what extent, they are supported in whole or in part by special levies or special funds. If, in fact, they are supported wholly from the general fund, obviously the present question would not arise; that is, the premium cost attributable to employees of those departments would be payable from the general fund as the auditor proposes. Again, in the absence of the exercise by the board of its authority to appropriate, the respondent auditor has no duty to apportion the payment, and we refrain from directing him to do so.

The Soldiers' Relief Commission, authorized by Revised Code Section 5901.02, presents a special problem. By Revised Code Section 5901.11, it may command, for its functions and purposes, the fruits of a mandated levy by the county commissioners on the taxable property of the county not to exceed one-half of one mill. *State, ex rel. Binder,* v. *Board of County Commrs.,* 174 Ohio St. 23. The fund provided by that levy is totally under the control of the Soldiers' Relief Commission. Payable from the fund is the compensation of its relief investigators and their clerks and its veterans' service officer and his assistants as fixed by the commission. Revised Code Sections 5901.06 and 5901.07.

If the mandated levy has been fully appropriated to the commission, no additional funds are payable from the general fund whether in the form of insurance premium costs for the benefit of the employees of the commission or for any other purpose. On the other hand, if the entire proceeds of the one-half mill levy have not been requested or appropriated to the commission, an expendi-

ture from the general fund for the premium costs attributable to commission employees would be authorized provided that the one-half mill levy is not thereby exceeded. Therefore, on the state of the record, we are equally in no position to determine the question as to Soldiers' Relief Commission.

*Judgment accordingly.*

MATTHIAS, HERBERT, DUNCAN and CORRIGAN, JJ., concur.

TAFT, C. J., concurs in paragraphs one, three and four of the syllabus and in the judgment to the extent it affirms the judgment of the Court of Appeals.

O'NEILL, J., concurs excepting paragraph two of the syllabus.