[Cite as *Stockberger v. Henry,* 196 Ohio App.3d 153, 2011-Ohio-1710.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STOCKBERGER ET AL., | : | JUDGES: |
| | | |
| Appellees and Cross-Appellants, | : | Hon. W. Scott Gwin, P.J. |
| | | Hon. Sheila G. Farmer, J. |
| v. | : | Hon. Patricia A. Delaney, J. |
| | | |
| HENRY, ENGR., | : | Case No. 10CA000018 |
| | | |
| Appellant and Cross-Appellee. | : | O P I N I O N |


CHARACTER OF PROCEEDING: Civil appeal from the Knox County Court from Knox County Court Common Pleas, Case No. 08OT02-0109

JUDGMENT: Affirmed in part; Reversed in part and Remanded

DATE OF JUDGMENT ENTRY: April 7, 2011

APPEARANCES:


Chester, Willcox & Saxbe, L.L.P., Gerhardt A. Gosnell II, and Charles R. Saxbe, for appellees and cross-appellants.

Peck, Shaffer & Williams, L.L.P., and Thomas A. Luebbers, for appellees and cross-appellants.

Luper, Neidenthal & Logan, Luther L. Liggett Jr., and Heather Logan Melick, for appellant and cross-appellee.

Schottenstein, Zox & Dunn and Patrick A. Devine, for amicus curiae Ohio Contractors Association.

Frederick A. Vierow, for amicus curiae County engineers Association of Ohio.

**Gwin, Presiding Judge.**

{¶1}   Defendant-appellant James L. Henry, in his capacity as the Knox County engineer and cross-appellee, appeals a judgment of the Court of Common Pleas of Knox County, Ohio, entered in favor of appellees and cross-appellants Allen Stockberger, Teresa Bemiller, and Roger Reed in their official capacities as members of the Board of County commissioners of Knox County.  Robert Wise, a former county commissioner, was originally named in the case, but Mr. Reed, his successor, has been substituted. In reviewing the legal issues involved, we have reviewed amicus curiae briefs from the County engineers Association of Ohio and Ohio Contractors Association in addition to the briefs of the engineer and the commissioners.

{¶2}   The engineer assigns two errors for our review:

{¶3}   "I. The trial court erred by failing to use an abuse-of-discretion standard as the county engineer enjoys discretion to determine whether an expenditure is for a 'highway purpose.'

{¶4}   "II. The trial court erred by not dismissing this case on its face, as a matter of law."

{¶5}   The commissioners assign a single error on cross-appeal:

{¶6}   Cross-Assignment of Error

{¶7}   "I. The trial court erred in denying plaintiffs'-cross appellants' request for injunctive relief."

{¶8} The issue presented in this case is whether the Knox County engineer can use funds restricted by the Ohio Constitution to highway purposes to pay his office's share of the cost of Knox County's premium for a risk-sharing pool. The trial court found the engineer could do so; we disagree.

The Constitutional and Statutory Basis

{¶9} R.C. 2744.081 provides:

{¶10} " Regardless of whether a political subdivision, under section 2744.08 of the Revised Code, secures a policy or policies of liability insurance, establishes and maintains a self-insurance program, or enters into an agreement for the joint administration of a self-insurance program, the political subdivision may, pursuant to a written agreement and to the extent that it considers necessary, join with other political subdivisions in establishing and maintaining a joint self-insurance pool to provide for the payment of judgments, settlement of claims, expense, loss, and damage that arises, or is claimed to have arisen, from an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function and to indemnify or hold harmless the subdivision's employees against such loss or damage."

{¶11} Section 5(A), Article XII of the Ohio Constitution provides:

{¶12} "No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than the cost of administering such laws, statutory refunds and adjustments provided therein, payment of highways obligations, cost for construction, reconstruction, maintenance and repair of public

highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highway."

{¶13} R.C. 315.12 (A) states:

{¶14} "[T]wo thirds of the cost of operation of the office of county engineer, including the salaries of all of the employees and the cost of maintenance of such office as provided by the annual appropriation made by the Board of County commissioners for such purpose, shall be paid out of the county's share of the fund derived from the receipts from motor vehicle licenses, as distributed under Section 4501.04 of the Revised Code, and from the county's share of the fund derived from the motor vehicle fuel tax as distributed under Section 5735.27 of the Revised Code."

{¶15} We will refer to the restricted funds as MVGT funds.

{¶16} R.C. 5543.01 states:

{¶17} "(A) Except as provided in division (B) of this section, the county engineer shall have general charge of the following:

{¶18} "(1) Construction, reconstruction, improvement, maintenance, and repair of all bridges and highways within the engineer's county, under the jurisdiction of the board of county commissioners, except for those county roads the board places on nonmaintained status pursuant to section 5541.05 of the Revised Code;

{¶19} "(2) Construction, reconstruction, resurfacing, or improvement of roads by boards of township trustees under sections 5571.01, 5571.06, 5571.07, 5571.15, 5573.01 to 5573.15, and 5575.02 to 5575.09 of the Revised Code;

**{¶20}** "(3) Construction, reconstruction, resurfacing, or improvement of the roads of a road district under section 5573.21 of the Revised Code.

**{¶21}** "(B) For any particular project, after notifying the county engineer, the board of township trustees of a township that has adopted a limited home rule government under Chapter 504 of the Revised Code may hire an independent professional engineer to be in charge of those activities listed in division (A)(2) of this section. The county engineer shall review all of the independent professional engineer's plans for improvements and provide the board of township trustees with comments on those plans within ten working days after receiving them. The county engineer shall monitor all plans for improvements in order to maintain compliance with existing construction standards and thoroughfare plans, and coordinate construction timelines within the county.

**{¶22}** "(C) The county engineer may not perform any duties in connection with the repair, maintenance, or dragging of roads by boards of township trustees, except that, upon the request of any board of township trustees, the county engineer shall inspect any road designated by it and advise as to the best methods of repairing, maintaining, or dragging that road."

Background Facts

**{¶23}** Knox County participates in the County Risk Sharing Authority ("CORSA"). CORSA provides general liability coverage, automobile liability coverage, errors-and-omissions liability coverage, and property coverage for all Knox County officers. It also provides law-enforcement liability coverage which applies only to the sheriff's

department and correctional facility. The Knox County engineer's office is included in the coverage.

**{¶24}** The county's CORSA premium is determined by an actuary employed by CORSA. It is based upon the exposure and loss experience of the individual counties, but not specifically for each separate department of the county. "Loss experience" involves claims made against the county in the previous five years, while "exposure" refers to the risk of each member based upon property values, number of vehicles, and payrolls for offices other than for the sheriff. CORSA encourages counties to seek reimbursement to the general fund from such offices.

**{¶25}** The commissioners presented evidence that they use a proportional mathematical comparison, using only the exposure component of risk, to determine the engineer's share of the CORSA premium. The court heard testimony from a representative of CORSA, who described how the county's premiums, and the engineer's share, were computed. The CORSA representative testified that the engineer's departmental share did not reflect actual claims paid out on his office's behalf; the actuary computed only the county's overall payout. There are not enough claims per department from which the actuary could establish an accurate estimate or rate for each department.

**{¶26}** The CORSA premium for Knox County for 2007/2008 was $217,510, which the commissioners paid out of the county's general fund. Thereafter, the commissioners requested reimbursement from the engineer's office and certain other offices which receive a significant amount of funding from sources outside the general fund.

**{¶27}** In June 2007, the commissioners sent the engineer an invoice for $19,789, the amount CORSA computed was the engineer's share of the CORSA premium for 2007-2008. The engineer refused to authorize payment of the invoice from the MVGT funds.

**{¶28}** In February 2007, one of the trucks in the engineer's fleet, being operated by an employee of the engineer's office, overturned while plowing snow on a county road, causing $13,138.16 in damage to the truck. CORSA's agreement with the county provided for a deductible of $2,500 per occurrence in the automobile-liability and physical-damage coverage portion of the program. The commissioners paid for the repair costs of the truck out of the general fund and were reimbursed by CORSA for the repair costs minus the deductible. The commissioners invoiced the engineer for the $2,500 deductible. The engineer refused payment of this invoice, although he subsequently conceded that the deductible was directly related to a highway purpose and could be paid from MVGT funds.

**{¶29}** The County engineer argues that he is constitutionally restricted from using MVGT funds to pay his office's share of the CORSA premium for the county. The commissioners, on the other hand, argue that maintaining CORSA coverage is part of the cost of operating the office, and the engineer may pay his office's share of the premiums.

**{¶30}** This dispute has been the subject of prior litigation. In *Knox Cty. Bd. of Commrs. v. Knox Cty. Engr.,* 109 Ohio St.3d 353, 2006-Ohio-2576 ("*Knox I*"), the Ohio Supreme Court reviewed this same issue involving the years 2002-2003. The Supreme Court found that the Ohio Constitution restricted the use of MVGT funds to

highway purposes or purposes directly connected thereto. In *Knox I,* the Supreme Court found that there was no evidence in the record showing that the payment of CORSA premiums constitutes a highway purpose or is directly connected with construction, maintenance, and repair of highways or the enforcement of traffic laws. The Supreme Court cautioned, however, that if the record contained evidence that the CORSA premiums pertained or directly related to highway purposes, or if the engineer's budget did not consist wholly of restricted funds, the outcome of the case might not be the same. Id. at ¶ 11.

{¶31} In the case at bar, the trial court reviewed testimony regarding whether the CORSA premiums pertained to, or were directly related to, highway purposes, and testimony regarding the engineer's budget. The trial court found that the commissioners were entitled to a declaratory judgment that the CORSA costs were directly connected to a highway purpose and that MVGT funds can be used to pay a portion of the annual cost of premiums. The court also found that MVGT funds may be used to reimburse the county for the deductible on the damage to the truck. However, the trial court refused to issue a mandatory injunction ordering the engineer to pay the allocated portion of the CORSA insurance costs.

II

{¶32} In his second assignment of error, the engineer argues that the court should have dismissed this action for three separate reasons: (1) res judicata, (2) lack of standing, and (3) engineer's lack of capacity to be sued.

{¶33} The engineer argues that the matter is res judicata because the Supreme Court has already reviewed the same issue in *Knox I.* We do not agree. *Knox I*

concerned a dispute for 2002-2003, while the case at bar deals with 2007-2008. In *Knox I,* the Supreme Court based its decision solely on the fact there was no evidence in the record that would support the commissioners' argument that the payment of the CORSA premiums was directly related to a highway purpose. The court specifically stated that if the record were otherwise, the outcome could be different.

**{¶34}** The doctrine of res judicata involves two concepts: (1) claim preclusion, or estoppel by judgment, and (2) issue preclusion, or collateral estoppel. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 254 N.E.2d 10. The collateral-estoppel aspect of res judicata "precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." (Emphasis sic.) *Whitehead* at 112. However, where a change in the facts has occurred since a decision was rendered that raises a new material issue or that would have been relevant in the earlier action, the doctrine of res judicata will not bar litigation of that issue in a later action. *State ex rel. Westchester v. Bacon* (1980), 61 Ohio St.2d 42, 399 N.E.2d 81*,* paragraph two of the syllabus.

**{¶35}** We find that this action is not res judicata, because the Supreme Court's decision in *Knox I* was based solely on Civ.R. 56, governing summary judgment, and the absence of evidence in the record, but did not address the question whether MVGT funds may ever be used to pay CORSA premiums.

**{¶36}** The engineer also argues that the commissioners lack standing and capacity to sue. Standing refers to whether a plaintiff can demonstrate that he has suffered or will suffer a specific injury that is traceable to the defendant's challenged

action and that the injury is capable of judicial resolution. *engineering Technicians Assn. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106, 110-111, 593 N.E.2d 472. An entity has standing when it has a personal stake in the outcome of the action. *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 75, 495 N.E.2d 380. The engineer asserts that the commissioners cannot demonstrate that the county has suffered any injury. We find, however, that if the CORSA premiums cannot be paid with MVGT funds, then the money must come out of the county's general fund. This is sufficient to give the commissioners standing to bring this action.

{¶37} Capacity to sue refers to whether the party can sue and be sued. The engineer argues that the commissioners can sue and be sued pursuant to R.C. 305.12, but that the Revised Code contains no provision for suits against the engineer's office. He states that the commissioners have a duty to defend his office and that the county is thus suing itself. The commissioners reply that this is true as to matters relating to liability to third parties, not internal disputes. A county has capacity to bring an action against a county official. See, e.g., *Montgomery Cty. Bd. of Commrs. v. Hensley,* Montgomery App. No.19754, 2003-Ohio-5730, where, as here, the board sought a declaratory judgment regarding the authority of county court judges.

{¶38} Declaratory actions are brought under R.C. 2721.03. It provides that "any person whose rights, status, or other legal relations are affected by a constitutional provision, [or] statute, ***may have determined any question of construction or validity arising under the *** constitutional provision, [or] statute, ***and obtain a declaration of rights, status, or other legal relations under it."

**{¶39}** We conclude that the trial court correctly overruled the motion to dismiss. The commissioners have standing to bring the action, the engineer has capacity to be sued, and the matter is not res judicata.

**{¶40}** The second assignment of error is overruled.

I

**{¶41}** In his first assignment of error, the engineer argues that the trial court erred in not applying an abuse-of-discretion standard to the engineer's decision not to pay the insurance premium. The engineer urges that he has the authority to determine whether an expenditure is for highway purposes, and the court should not have entered judgment for the commissioners without finding that he abused his discretion. We do not agree. However, we do agree that the trial court reached the wrong decision based upon the record in the case.

**{¶42}** The trial court's amended judgment entry states that the engineer "cannot" use MVGT funds, rather than "shall not" use MVGT funds. The entry further "authorizes" the engineer to make the payments rather than "ordering" him to do so. This, coupled with the denial of the commissioners' request for injunction, is the basis of the engineer's assertion that the trial court did not find that payment was mandatory, but rather that he had discretion to determine whether to pay the premium and deductibles.

**{¶43}** The engineer argues that boards of county commissioners are creatures of statute and have only such authority as is granted by statute or that can be fairly implied from a statute. *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 621 N.E. 2d 696. The engineer asserts that he is an

independently elected public official charged with duties related to construction and maintenance of public highways, bridges, and other facilities, pursuant to R.C. 315.08. The engineer argues that the county commissioners have no general supervisory authority over his actions if he is acting within his authority. He asserts that county commissioners can appropriate funds to be used by the engineer, but they have no authority to require the engineer to expend those funds.

{¶44} The commissioners respond that the decision whether expenditure is related to highway purposes sufficient to satisfy the requirements of the Ohio Constitution is a legal determination for a court, and not a factual determination left to the engineer's discretion. The commissioners argue that several courts of appeals have held that the decision whether a given action violates the Ohio Constitution presents a question of law. See *Andreyko v. Cincinnati,* 153 Ohio App.3d 108, 2003-Ohio-2759, out of the Fourth District; *LTV Steel Co. v. Indus. Comm.* (2000), 140 Ohio App.3d 680, out of the Tenth District, and *Fuchs v. Scripps Howard Broadcasting Co.,* 170 Ohio App.3d 679, 2006-Ohio-5349, out of the First District. The commissioners also note that in *Knox I,* the Ohio Supreme Court did not accord the engineer any discretion in the decision whether to pay for CORSA premiums.

{¶45} We agree that the issue is not a matter of discretion for the engineer's determination, but a mixed question of law and fact for the courts. Because the issue presents a question of law, we review the matter de novo. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889.

{¶46} Our analysis consists of two steps. First, the commissioners must demonstrate that the share of the cost of CORSA allocated to the engineer's office is

accurate. Secondly, there is a separate issue of showing that participation in CORSA is either directly related to highway purposes or to the operation of the office.

{¶47} The trial court found that the formula for allocating health-insurance premiums and workers' compensation is the same formula used to apportion the CORSA premiums among the departments. We agree that the commissioners proved that CORSA's computation of the engineer's share of the premium is accurate. However, for the reasons that follow, we find that the commissioners have not established a nexus between the premium and highway purposes or the operation of the engineer's office.

{¶48} The plain language of the statute gives us no guidelines regarding the factors a court should use to determine whether there is sufficient nexus between the activity or cost and a "highway purpose." The Ohio Constitution sets out a list of uses that are acceptable, but does not provide for insurance or risk sharing. It does authorize use of MVGT funds to pay "highway obligations." Likewise, R.C. 315.12 provides that MVGT funds can be used for salaries and operational costs.

{¶49} In *Knox I,* 109 Ohio St.3d 353, 2006-Ohio-2576, the Supreme Court directed our attention to *Grandle v. Rhodes* (1959), 169 Ohio St. 77, 157 N.E.2d 336: "[W]e stated in [the *Grandle*] syllabus that 'Section 5a, Article XII of the Constitution of Ohio closely restricts the expenditure of the fees and taxes received in relation to vehicles using the public highways to purposes *directly connected with* the construction, maintenance and repair of highways and the enforcement of traffic laws * * *.' (Emphasis added.) There we held that the restricted funds could not be used to pay fees of a taxpayer's lawyers who successfully sued to block the use of highway

funds for a preliminary study regarding the contemplated construction of a parking garage underneath the statehouse." *Knox I* at ¶ 10.

{¶50} The court found that the engineer had conceded that the deductible for repairs to the damaged truck could be paid with MVGT funds, because it was damaged while being used for a highway purpose. We agree.

{¶51} The trial court found that the engineer pays for health-insurance premiums, travel to county engineer conferences and seminars, office supplies, copy machines, printers, and utilities out of MVGT funds. The court cited *Madden v. Bower* (1969), 20 Ohio St.2d 135, 254 N.E. 2d 357, wherein the Supreme Court found that if a county employee receives the benefits of a group health-insurance plan procured by a board of county commissioners, the part of the premium that is paid from public funds is a part of the cost of the public service performed by each such employee. The proportionate cost of premiums for county employees' group health-insurance plan paid on behalf of employees of a county engineer who are engaged directly in work on county roads is a part of the cost of services rendered by such employees and is payable from the funds established by R.C. 315.10.

{¶52} We find that *Madden* is distinguishable from the case at bar. *Madden* dealt with health-insurance premiums. By contrast the CORSA risk-sharing pool is not a part of the employee's fringe benefits. CORSA is not insurance. R.C. 2744.08 clearly differentiates between a risk-sharing pool and insurance. "A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state." R.C. 2744.081(E)(2).

{¶53} In *Knox I,* 109 Ohio St.3d 353, the court referred to a footnote in *Madden* that cautioned that the engineer's budget will contain some expenditure for the operation of the office that are nevertheless not related to the planning, construction, improvement, or repair of roads, streets and highways. The court set out a nonexhaustive list of a county engineer's duties that involve operations of the office, but are unrelated to highway purposes. Those duties include supervision of surveying, tax-map drafting, and assistance to the board in connection with improving waste-disposal works, ditches, sanitary sewers, storm-drainage works, and sidewalks. Thus, it is not sufficient to demonstrate that the expenditures are related to the operations of the engineer's office. The evidence must show that the expenditures are related to the operations of the office that are related to highway purposes, not simply operations of any office.

{¶54} The engineer presented evidence that he engages in various activities unrelated to highway purposes. Those activities include sanitation engineering; stormwater engineering pursuant to a contract between the commissioners and the Soil and Water Conservation District, preparation of a district master plan for sanitation and stormwater, administration of community block grants, advising and assisting the county airport and fair, advising incorporated villages in the county, administering local public-authority grants, and overseeing the inspection of county bike trails.

{¶55} The parties' Joint Exhibit 10 contains a breakdown of the definitions and costs of the various coverages CORSA provides for the engineer's office. It includes property coverage, auto liability and physical damage, public-official liability, and general liability, all showing the engineer's share of the premium in percentages. It

expresses the percentage of the total county property, payroll, and vehicles and shows the percentage attributable to the engineer's office. It does not break the figures down in such a way as to estimate how much of the engineer's property and personnel actually deal directly related to highway purposes. The CORSA representative testified that it was CORSA's position that the entire amount it had computed as the engineer's share of the premiums was for highway purposes.

{¶56} The representative from CORSA acknowledged that the premiums were prospective in nature; that is, the coverage the counties purchase is for possible future payouts, not simply reimbursements for past payouts.

{¶57} The county's decision to participate in CORSA protects not only the engineer's office and employees but covers any office and employee of the county. If another department suffers a loss but the engineer's office does not, the share of the premiums paid by the engineer in effect provides a benefit to persons and offices not directly related to highway purposes.

{¶58} The court found that there was no difference between the premiums for health insurance and the cost for CORSA. We do not agree. We find that pursuant to *Madden,* health insurance is directly related to highway purposes, but the record does not establish sufficient nexus between CORSA and either a highway purpose or a cost of operation.

{¶59} In the trial court's findings of fact, filed November 19, 2009, the court found that the engineer's account contains both MVGT funds and restricted funds, some coming from federal projects or reimbursements from other county departments. We find that fact to be irrelevant; how much of the commingled funds are MVGT funds

is ascertainable and identifiable.  The engineer testified that he did place all the funds he received into a single account but sought reimbursements from the other county departments and from the commissioners for non-MVGT activities.  The *Knox I* opinion stated that if the engineer's budget did not consist wholly of restricted funds, the outcome of the case might be different.  This implies that the engineer might be able to utilize funds from other sources to reimburse the county.  It does not mean that if the engineer commingles the funds then he can use MVGT funds for nonhighway purposes.

**{¶60}** We agree with the trial court that the deductible for the repairs to the engineer's vehicle is related to a highway purpose and payable with MVGT funds.

**{¶61}** We find that the commissioners did not present evidence establishing a direct nexus between the invoice for the premiums and highway purposes or operations of the engineer's office.  We conclude that the trial court utilized the proper standard in analyzing the case but nevertheless reached an incorrect result.

**{¶62}** The assignment of error is overruled in part as to the court's finding the deductible for the damage to the truck is payable from MVGT funds and sustained in part as to its finding the engineer can pay his share of the premiums from MVGT funds.

Cross-Appeal

**{¶63}** We now turn to the cross-appeal.  The commissioners argue that the court should have issued a mandatory injunction directing the engineer to reimburse the county for the CORSA premiums.  They argue that a mandatory injunction is the proper remedy to compel performance of a government official in conjunction with declaratory relief.

{¶64} An injunction is an extraordinary remedy appropriate only if the party requesting it establishes two requirements. First, the party must show that a vested right has been abridged, infringed upon, or eliminated. Secondly, the moving party must also show by clear and convincing evidence that immediate and irrefutable harm will result and no adequate remedy at law exists.

{¶65} Because we find that the engineer could not constitutionally reimburse the county with MVGT funds, it follows that the commissioners were not entitled to an injunction directing the engineer to authorize the payments.

{¶66} The assignment of error on cross-appeal is overruled.

{¶67} For the foregoing reasons, the judgment of the Court of Common Pleas of Knox County, Ohio, is affirmed in part, as to the deductible for the damaged truck, and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.

Judgment accordingly.

FARMER and DELANEY, JJ., concur.