STOCKBERGER ET AL., APPELLANTS, *v.* HENRY, APPELLEE.

[Cite as *Stockberger v. Henry,* **134 Ohio St.3d 213, 2012-Ohio-5392.**]

*Taxation—Restrictions on use of motor vehicle taxes and fuel taxes—Ohio Constitution, Article XII, Section 5a—Insurance premiums attributable to operation of county engineer's highway department.*

(No. 2011-0859—Submitted March 21, 2012—Decided November 27, 2012.)

APPEAL from the Court of Appeals for Knox County,

No. 10CA000018, 196 Ohio App.3d 153, 2011-Ohio-1710.

_____

**CUPP, J.**

{¶ 1}   In this appeal, we must determine whether Article XII, Section 5a of the Ohio Constitution permits the use of motor vehicle and gas tax ("MVGT") funds to pay those costs of a county's joint self-insurance pool attributable to covering the risk of liability and loss resulting from the operations of a county engineer's highway department.  For the reasons that follow, we conclude that the use of MVGT funds to pay the costs of the joint self-insurance pool attributable to a county engineer's highway department is permitted by Article XII, Section 5a of the Ohio Constitution.

**I.  Facts and Procedural History**

*A. Knox I*

{¶ 2}   The issue involved in this case was before us previously in *Knox Cty. Bd. of Commrs. v. Knox Cty. Engineer*, 109 Ohio St.3d 353, 2006-Ohio-2576, 847 N.E.2d 1206 ("*Knox I*").  We adopt and incorporate the facts from *Knox I* into this opinion.

{¶ 3}   In *Knox I,* the Knox County engineer appealed the Fifth District Court of Appeals' decision that the Ohio Constitution did not prohibit payment of

the engineer's share of the County Risk Sharing Authority ("CORSA") liability-insurance premiums out of MVGT funds, because that expense was a "cost of operation" of the engineer's office within the meaning of R.C. 315.12.[1]  *Id.* at ¶ 1-2.  Therefore, the issue in *Knox I* was whether the engineer's share of the premiums constituted a cost of operating the engineer's office, pursuant to R.C. 315.12(A) and thus was not precluded by the restriction on the expenditure of MVGT funds in Article XII, Section 5a of the Ohio Constitution.  *Id.* at ¶ 8-9.

**{¶ 4}**  We began our analysis in *Knox I* by reaffirming the principle established in *Grandle v. Rhodes,* 169 Ohio St. 77, 157 N.E.2d 336 (1959), that " 'Section 5a, Article XII of the Constitution of Ohio closely restricts the expenditure of the fees and taxes received in relation to vehicles using the public highways to purposes *directly connected with* the construction, maintenance and repair of highways and the enforcement of traffic laws * * * .' (Emphasis sic.)" *Knox I* at ¶ 10, quoting *Grandle* at syllabus.  Accordingly, "[d]espite the mandate of R.C. 315.12(A) that two-thirds of the cost of operation of the engineer's office shall be paid from [MVGT] funds," the expenditure of those funds by the engineer "is constitutionally restricted, [and he] may expend these moneys only for the purposes listed in Section 5a, Article XII of the Constitution or purposes directly connected thereto."  *Id.* at ¶ 11.

**{¶ 5}**  We concluded that there was no evidence that established that the "CORSA insurance premiums [were] for a highway purpose or [were] directly connected with construction, maintenance, and repair of the highways or the

---

1. R.C. 315.12(A) states:

> Two thirds of the cost of operation of the office of county engineer, including the salaries of all of the employees and the cost of maintenance of such office as provided by the annual appropriation made by the board of county commissioners for such purpose, shall be paid out of the county's share of the fund derived from the receipts from motor vehicle licenses, as distributed under section 4501.04 of the Revised Code, and from the county's share of the fund derived from the motor vehicle fuel tax as distributed under section 5735.27 of the Revised Code.

enforcement of traffic laws." *Id.* However, we did note that "if the record contained evidence that the CORSA premiums pertained to highway purposes or were directly related thereto, * * * our outcome might not be the same." *Id.*

*B. Events after* Knox I

*1. 2007-2008 Knox County CORSA Premium*

**{¶ 6}** CORSA provided the Knox County commissioners with the 2007-2008 Memorandum of Coverage. The memorandum outlined the types of coverage that applied to Knox County: general liability, law-enforcement liability, automobile liability, errors and omissions liability, excess liability, property, equipment breakdown, and crime. Not every type of coverage applies to each Knox County office or department.

**{¶ 7}** CORSA's actuary calculated the premiums for the coverages. The premiums comprised three types of program costs: loss-fund contributions, reinsurance cost, and administration cost. Knox County's loss-fund contributions were determined based on its exposure and loss experience. Exposure is the measure of risk based upon the county's property values, payroll, and number of county vehicles, deputies, and inmates. Loss experience is the individual county's loss history for the previous five years.

*2. Commissioners' Invoice to the Engineer*

**{¶ 8}** In June 2007, the commissioners sent to the engineer an invoice for the portion of the 2007-2008 Knox County CORSA premium allocated to the engineer's highway department. This allocated portion was only for the following coverages: general liability, public officials' liability, automobile liability and physical damage, and property. The engineer's allocated portion for each type of coverage was calculated using a formula developed by CORSA under the direction of its actuary.

*3. General Liability Coverage and Public Officials' Liability Coverages*

{¶ 9}  With respect to calculating the general liability coverage and public officials' liability coverage, the portion of the engineer's payroll that was paid from MVGT funds was divided by the total county payroll.  The resulting percentage was multiplied by the CORSA premiums for the general liability coverage and public officials' liability coverage.  The result was the engineer's allocated portion for each of these coverages.

{¶ 10} General liability coverage provides coverage for personal injury and property damage caused by negligent acts of the engineer and his employees. Injury to a motorist resulting from the failure to properly maintain a road in a safe condition is an example of a covered event.

{¶ 11} Public officials' liability coverage provides insurance coverage for claims alleging errors in judgment or decision-making or violations of civil rights of employees or third parties.  Employment conduct such as discrimination, wrongful termination, and sexual harassment involving the engineer's employees are examples of covered events.

*4. Automobile Liability and Physical-Damage Coverage*

{¶ 12} The engineer's allocated portion of the automobile liability and physical-damage coverage was obtained by dividing the number of the engineer's vehicles purchased with MVGT funds and used for a highway purpose by the total number of county vehicles to obtain a percentage.  The total amount of the CORSA premium for Knox County's automobile liability and physical-damage coverage was then multiplied by the resulting percentage.  This yielded the engineer's allocated share of this premium.

{¶ 13} The automobile liability and physical-damage coverage provides insurance coverage for personal injury and property damage caused by the engineer's vehicles operated by the engineer and his employees.  An engineer's vehicle striking another vehicle, causing personal injury to third parties, and

property damage to vehicles owned by third parties is an example of a covered event. Additionally, it provides coverage for damage to the engineer's vehicles. Examples of covered events include damage to the engineer's vehicles due to collisions with fixed objects or animals and damage by fire, windstorm, or vandalism.

*5. Property Coverage*

**{¶ 14}** The last component of the CORSA coverage of the engineer's highway department is the property coverage. The engineer's property values were divided by the total county property values. The total CORSA premium for Knox County's property coverage was multiplied by the resulting percentage. This product was the engineer's allocated portion of this premium. The engineer's property values included buildings used by the engineer for maintenance of vehicles and equipment used on the highway and to maintain roads and bridges. Also included was the value of the road equipment, such as backhoes and graders, used to maintain roads and bridges.

**{¶ 15}** Buildings, contents, and unlicensed off-road equipment that are damaged by a covered event are covered by the property coverage. Covered events include fire, windstorm, crime, and flood.

*6. Engineer's Refusal*

**{¶ 16}** The engineer refused to authorize payment of the invoice from the MVGT funds. He argued that the allocated portion of the annual CORSA premiums was not directly connected to a highway purpose.

*7. Litigation*

**{¶ 17}** The commissioners sued the engineer, seeking a declaration that the invoice sent to the engineer for the engineer's allocated portion of the county's 2007-2008 CORSA premiums represented an expenditure for a highway purpose or was directly connected with highway purposes and thus properly payable from MVGT funds.

5

**{¶ 18}** A bench trial was held. The trial court held that the CORSA premium was directly connected to a highway purpose and could constitutionally be paid from MVGT funds.

**{¶ 19}** On appeal, the Fifth District Court of Appeals reversed, holding that the commissioners had not presented sufficient evidence to establish a direct nexus between the CORSA premiums and a highway purpose. 196 Ohio App.3d 153, 2011-Ohio-1710, 962 N.E.2d 828, ¶ 61.

**{¶ 20}** We accepted the commissioners' appeal under our discretionary jurisdiction to review whether Article XII, Section 5a authorizes the use of MVGT funds "to defray a county's cost of participating in a joint self-insurance pool attributable to covering the risk of liability and loss resulting from the operations of a county engineer's highway department." 129 Ohio St.3d 1474, 2011-Ohio-4751, 953 N.E.2d 841. For the reasons that follow, we hold that the use of MVGT funds to pay for a county's cost of participating in a joint self-insurance pool to the extent reasonably attributable to covering the risk of liability and loss resulting from the operations of a county engineer's highway department is authorized by Article XII, Section 5a of the Ohio Constitution.

## II. Article XII, Section 5a

**{¶ 21}** Article XII, Section 5a states:

No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws,

and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

### III. Analysis

**{¶ 22}** We have examined a number of challenges to the expenditure of MVGT funds for various purposes. Our previous decisions have not limited the use of MVGT funds to expenses of physical construction, maintenance, and repair of highways and bridges. We have held that MVGT funds may be expended to pay for the study of a turnpike project, *State ex rel. Kauer v. Defenbacher,* 153 Ohio St. 268, 91 N.E.2d 512 (1950), paragraph six of the syllabus, the lighting of urban portions of limited-access highways, *State ex rel. Walter v. Vogel,* 169 Ohio St. 368, 372, 159 N.E.2d 892 (1959), the purchase of whole tracts of land for constructing a highway, even though only a part thereof might be used for the highway and the remainder sold for commercial or private use, *State ex rel. Preston v. Ferguson*, 170 Ohio St. 450, 462-463, 166 N.E.2d 365 (1960), and, most relevant here, the health-insurance premiums for the engineer's highway-department employees, *Madden v. Bower,* 20 Ohio St.2d 135, 254 N.E.2d 357 (1969).

**{¶ 23}** Whether Article XII, Section 5a authorizes the expenditure of MVGT funds for the engineer's highway department's allocated portion of the CORSA premium is guided by our analysis in *Madden.* In *Madden,* the issue was whether the cost of health-insurance premiums for the employees of the county engineer's highway department could properly be paid from MVGT funds. We determined that the highway-department employees were directly connected to a highway purpose by virtue of the work they performed. *Id.* at paragraph two of the syllabus. Because the work of the employees was in furtherance of the purposes for which the MVGT funds could be constitutionally expended, the health-insurance premiums could also be properly paid with the MVGT funds.

{¶ 24} The operations of the engineer's highway department have an inherent risk. This risk cannot be separated from the highway department's operations and is thus directly connected to a highway purpose. The evidence establishes that the CORSA premiums recognize this risk of loss inherent in the operation, activities, and duties of the engineer that are directly connected to the construction, maintenance, and repair of the highways or the enforcement of traffic laws in the calculation of the premium. Moreover, the above examples of claims covered by the four types of coverages demonstrate that the inherent risk of loss of the engineer's highway department's operations is included in the coverages. Consequently, just as the health-insurance premiums provided coverage to the employees whose jobs were directly connected to a highway purpose, the CORSA premiums similarly provide coverage for the inherent risk directly connected to the construction, maintenance, and repair of the highways or the enforcement of traffic laws.

{¶ 25} Moreover, the manner in which a county decides to ameliorate that risk, whether by being self-insured, purchasing its own insurance policy, or joining the CORSA risk pool, does not alter the directness of the connection. Rather, it merely represents a level of risk of financial exposure that the commissioners are willing to have their county assume.

{¶ 26} The engineer argues that the prospective nature of the coverage, covering possible future payments of any county's loss, rather than reimbursements for the actual past costs incurred specifically by the highway department, undermines any finding that the premiums are directly connected. However, the health-insurance premiums in *Madden* were also prospective in nature, collected to cover future health-related claims. Further, in *State ex rel. Preston*, we rejected an argument that the purchase of land for the prospective development of a highway stripped the acquisition of its highway-purpose status. 170 Ohio St. at 461-462, 166 N.E.2d 365.

**{¶ 27}** Additionally, the engineer maintains that CORSA protects not only the highway department and its employees but also any department and employee of Knox County. The engineer contends that if he does not suffer a loss and another department does, the MVGT money paid by the engineer will benefit those other departments rather than only the directly connected costs attributable to highway purposes, as explicitly required by Article XII, Section 5a.

**{¶ 28}** We are not persuaded by this argument. This same concern was present in the payment of health-insurance premiums. The highway- department employees' premiums were not to be set aside to pay only those health-related claims incurred by the engineer's employees. Instead, the health-insurance premiums paid by MVGT funds were to be placed in a pool and mingled with the premiums paid by other county departments. Therefore, just as the engineer argues currently, the premiums paid with MVGT funds may have paid the claim of county employees other than employees of the engineer, thus benefiting another department.

**{¶ 29}** *Madden* and *State ex rel. Preston* teach us that the focus of our inquiry is on whether the item for which the MVGT funds are being expended is directly connected to a highway purpose. In *State ex rel. Preston*, we held that MVGT funds could be expended to purchase land for the construction of a highway because the land was directly related to a highway purpose. 170 Ohio St. at 462-463, 166 N.E.2d 365. The fact that the remainder of the land not used for the construction of the highway could be sold "to private individuals for commercial or private use" did not remove the purchase's direct connection to a highway purpose. *Id.* Similarly, since the CORSA premiums are to mitigate the inherent risk that is directly related to a highway purpose, Article XII, Section 5a is not violated. How the funds may be expended by CORSA does not alter the premium's direct connection to a highway purpose.

**{¶ 30}** There is a significant difference between health insurance and CORSA coverage—the manner in which claims are incurred. While health-related claims may be incurred because of an injury or illness that resulted from the employee's duties with the highway department, claims are not so limited. In contrast, the engineer's highway department's allocated portion of the annual CORSA premiums provides coverage only for those covered events that arise from the risks directly connected to a highway purpose. This fact provides even greater support for concluding that Article XII, Section 5a authorizes the expenditure of MVGT funds for the allocated premiums.

**{¶ 31}** Next, we address whether the evidence presented by the commissioners establishes that the allocated portion sought to be paid for with MVGT funds is solely for that portion of the CORSA premiums attributable to the highway operations of the engineer and does not include that portion of the CORSA premium attributable to the engineer's nonhighway activities. We conclude that it does.

**{¶ 32}** In *Madden,* we approved proportionality as an acceptable method to determine how much of the county employees' group health-insurance premium could be attributed to the highway department's employees. 20 Ohio St.2d 135, 254 N.E.2d 357, at paragraph two of the syllabus. In the case now before us, the evidence demonstrated that the formula developed at the direction of the CORSA actuary used proportionality to calculate the premiums attributable to the engineer's highway department. Accordingly, the commissioners used the same mechanism we approved in *Madden* to calculate the engineer's allocated portion.

**{¶ 33}** Additionally, in calculating the allocated portion, CORSA considered only the salaries, equipment, vehicles, and property that were directly connected to a highway purpose. The engineer's nonhighway operations, such as the map department and work performed by the engineer related to county sewers,

were not included in the calculations. Excluding the nonhighway operations responded to our concern that " 'a board of county commissioners may ignore the fact that certain duties of the county engineer * * * involve functions unrelated to the planning, construction, improvement or repair of roads, streets and highways.' " *Knox I,* 109 Ohio St.3d 353, 2006-Ohio-2576, 847 N.E.2d 1206, ¶ 12, quoting *Madden*, 20 Ohio St.2d at 140, 254 N.E.2d 357, fn. 2. Therefore, we conclude that the evidence presented by the commissioners established that the allocated premium amounts requested to be reimbursed from MVGT funds were directly connected to a highway purpose.

### IV. Conclusion

{¶ 34} We conclude that Article XII, Section 5a of the Ohio Constitution authorizes the use of MVGT funds to pay a county's cost of participating in a joint self-insurance pool attributable to covering the risk of liability and loss resulting from the operations of a county engineer's highway department.

{¶ 35} We reverse the judgment of the court of appeals and remand for consideration, if appropriate, of the commissioners' cross-appeal, which the appellate court initially overruled based on the finding that Article XII, Section 5a of the Ohio Constitution does not authorize the use of MVGT funds to pay a county's cost of participating in a joint self-insurance pool attributable to covering the risk of liability and loss resulting from the operations of a county engineer's highway department.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

_____

James E. Arnold & Associates, L.P.A., Gerhardt A. Gosnell II, and Damion M. Clifford; and Peck, Shaffer & Williams, L.L.P., and Thomas Luebbers, for appellants.

Luper, Neidenthal & Logan, Luther L. Liggett Jr., and Heather Logan Melick, for appellee.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Eugene L. Hollins, and Dale D. Cook, urging reversal for amici curiae County Commissioners Association of Ohio, County Risk Sharing Authority, Ohio Municipal League, Ohio Township Association, Auglaize County, Clermont County, Crawford County, Greene County, Hancock County, Jackson County, Pike County, Stark County, Van Wert County, and Wayne County.

Frederick A. Vierow, urging affirmance for amicus curiae County Engineers Association of Ohio.

Ice Miller L.L.P. and Patrick A. Devine, urging affirmance for amicus curiae Ohio Contractors Association.

_____