BEAVER EXCAVATING COMPANY ET AL., APPELLANTS, *v.* TESTA,

TAX COMMR., APPELLEE.

**[Cite as *Beaver Excavating Co. v. Testa,* 134 Ohio St.3d 565, 2012-Ohio-5776.]**

*Taxation—Commercial-activity tax—Motor-vehicle-fuel sales—Constitutionality—The allocation under R.C. 5751.20 of commercial-activity-tax revenues derived from the gross receipts of the sale of motor-vehicle fuel to nonhighway purposes violates the Ohio Constitution, Article XII, Section 5a.*

(No. 2011-1536—Submitted July 11, 2012—Decided December 7, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-581, 2011-Ohio-3649.

_____

SYLLABUS OF THE COURT

The allocation under R.C. 5751.20 of commercial-activity-tax revenues derived from the gross receipts of the sale of motor-vehicle fuel to nonhighway purposes violates the Ohio Constitution, Article XII, Section 5a.

_____

CUPP, J.

{¶ 1} This case challenges the constitutionality of the Ohio commercial-activity tax ("CAT"), R.C. Chapter 5751, as applied to gross receipts from motor-vehicle-fuel sales. In particular, we are asked to determine whether the imposition of the CAT on revenues derived from the sales of motor-vehicle fuel is unconstitutional because it contravenes the Ohio Constitution, Article XII, Section 5a. For the reasons that follow, we hold that the expenditure of the CAT revenue that is derived from motor-vehicle-fuel sales contravenes the Ohio Constitution. Therefore, we reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

## I. Factual and Procedural Background

{¶ 2}   Appellants consist of two groups: contractors and county engineers.  The parties who are contractors are Beaver Excavating Company; Broshear Contractors, Inc.; Gerken Paving, Inc.; Independence  Excavating, Inc.; Kokosing Construction Company, Inc.; Lykins Companies, Inc.; Ohio Machinery Co., Inc.; Prus Construction Company; The Ruhlin Company; and J.D. Williamson Construction Company, Inc. (collectively, the "taxpayers"). The remaining appellants are the county engineers of Ashland and Highland Counties (collectively, the "county engineers").

{¶ 3}   In 2008, appellants filed a declaratory-judgment action in the Court of Common Pleas of Franklin County against appellee, the Tax Commissioner of Ohio.  The taxpayers claimed that in the course of their business, they generated gross receipts derived from motor-vehicle-fuel sales and that they have been improperly subject to, and have paid, the CAT as measured by those gross receipts since July 2007.  The county engineers claimed that their budgets for county-infrastructure projects (e.g., highway and bridge construction and repair) depend, in part, on moneys derived from taxes relating to motor-vehicle-fuel sales and that they are being deprived of that money because the CAT is not collected and distributed in a manner consistent with the Ohio Constitution, Article XII, Section 5a.  Appellants sought a judgment declaring that the CAT, as it relates to motor-vehicle-fuel sales, violates Section 5a.   Additionally, they requested an injunction to prevent the tax commissioner from levying, enforcing, or collecting the CAT as it relates to gross receipts derived from the sales of motor-vehicle fuel.

{¶ 4}   The parties filed motions for summary judgment.  The trial court granted the tax commissioner's motion and denied the taxpayers and county engineers' motion. The trial court relied heavily on *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, reasoning that if the imposition of the CAT on gross receipts derived from food sales is constitutional, then by analogy, the imposition of the CAT on gross receipts derived from motor-vehicle-fuel sales is similarly constitutional.  In *Ohio Grocers,* this court held that the CAT was not an excise tax on the sale of food for off-

2

premise consumption and did not violate the prohibition of sales or excise taxes on food found in the Ohio Constitution, Article XII, Sections 3(C) and 13. *Ohio Grocers* at ¶ 1.

{¶ 5} The appellate court also applied the rationale and conclusions of *Ohio Grocers* to the issue presented by appellants, and it affirmed the trial court's judgment. The appellate court concluded that the background and history of Section 5a did not support the contention that the CAT was a tax "relating to" motor-vehicle-fuel sales. *Beaver Excavating Co. v. Levin*, 10th Dist. No. 10AP-581, 2011-Ohio-3649, ¶ 34. The court acknowledged that a relationship exists between the CAT and motor-vehicle-fuel sales, but it held that the "relationship is too attenuated to find that the statutory allocation of the CAT moneys violates Section 5a." *Id.* Based on this rationale, the court overruled appellants' first assigned error and overruled without discussion the two remaining assigned errors.

{¶ 6} We accepted appellants' appeal under our discretionary jurisdiction. *Beaver Excavating Co. v. Testa*, 130 Ohio St.3d 1493, 2011-Ohio-6556, 958 N.E.2d 956.

## II. Standing

{¶ 7} Appellants assert that the CAT is unconstitutional because the revenue derived from the CAT relates to the sale of motor-vehicle fuel and the revenue is not being expended in accordance with the restricted purposes of the Ohio Constitution, Article XII, Section 5a.

{¶ 8} As an initial matter, the tax commissioner asserts that appellants lack standing. Standing is a threshold requirement that must be met before a court may consider the merits of a legal claim. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27; *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 22. Standing exists only when (1) the complaining party has suffered or has been threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, (2) the law in question caused the injury, and (3) the relief requested will redress the injury. *Cuyahoga Cty. Bd. of Commrs.* at ¶ 22.

**{¶ 9}** The tax commissioner contends that appellants do not have standing because the relief appellants requested cannot redress their injury. In support of this argument, the tax commissioner states that the taxpayers question the validity of collecting the CAT and advocate for the cancellation of that tax with respect to its application to motor-vehicle-fuel sales.

**{¶ 10}** The tax commissioner distinguishes the taxpayers' claim from one that would assert that tax revenues were being expended outside the permissible scope of Section 5a, in which case the proper remedy would be enforcement of the spending restriction. Thus, according to the tax commissioner, because the only remedy a court can impose for violating Section 5a is the enforcement of the spending restraint, not the cancellation of the collection of the CAT as applied to motor-vehicle-fuel sales, the taxpayers' requested relief differs from the relief that is available under Section 5a. The tax commissioner contends that because the relief requested by the taxpayers cannot be obtained, the injury is not redressable in this case, and, thus, the taxpayers lack standing. *See, e.g.*, *Clifton v. Blanchester,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 25-29.

**{¶ 11}** The tax commissioner acknowledges that the county engineers could have standing but contends that they do not have standing in this case, because they have not requested enforcement of the spending restraint of Section 5a. Finally, the tax commissioner argues that "standing is jurisdictional, the issue is non-waivable, and the Court must satisfy itself that standing exists."

**{¶ 12}** We conclude that appellants do have standing.[1] Appellants originated this matter as a declaratory-judgment action. The Declaratory Judgment Act authorizes a party to seek a determination of legal rights, even in the context of a broad constitutional

---

1. The tax commissioner concedes that he did not pursue the issue of lack of standing, but he argues that the issue is not waivable, because it is jurisdictional. We will address the standing argument in its jurisdictional aspect only. To the extent that the tax commissioner's argument relates to nonjurisdictional questions of the capacity to sue or whether these appellants properly stated a claim for declaratory relief, we regard such issues as either waived or merged into the merits issue.

challenge to the imposition of a tax.  *See* R.C. 2721.03; *Ohio Grocers*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, at ¶ 8; *Herrick v. Kosydar*, 44 Ohio St.2d 128, 339 N.E.2d 626 (1975).  In fact, the General Assembly explicitly anticipated the constitutional challenge raised by appellants.  A provision in the CAT legislation, R.C. 5751.31, expressly creates a special procedure for a direct appeal from a tax commissioner's determination to this court, in cases involving the commissioner's authority to assess taxes, if the primary issue is "an issue arising under Section * * * 5a * * * of Article XII, Ohio Constitution."

{¶ 13} Moreover, in addressing an analogous matter, the United States Supreme Court has found that the argument that appellants lack standing because they sought to cancel the tax rather than to redirect the proceeds is without merit.  In *United States v. Butler*, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936), the government argued that the taxpayers did not have standing to challenge the constitutionality of a federal tax imposed by the Agricultural Adjustment Act.  The government argued that the taxpayers were challenging how the tax revenues were spent and not the legality of the tax.  The Supreme Court, however, determined that the taxpayers had standing to "challenge the legality of the exaction."  *Id*. at 61.  The court noted that the taxpayers were not contesting expenditures without challenging the legality of the tax, but were "resist[ing] the exaction as a step in an unauthorized plan."  *Id*. at 58.

{¶ 14} We also reject the tax commissioner's distinction between cancellation of a tax and redirection of the proceeds as a basis upon which to deny standing.  In this respect, the state challenges whether appellants chose the correct remedy.  That is a matter to be decided upon the merits and not as a threshold issue of jurisdiction.

{¶ 15} Accordingly, we conclude that appellants meet the traditional requirements for standing.  The taxpayers (1) allege that they have paid the CAT with respect to gross receipts arising from motor-fuel sales, (2) claim an injury because the CAT has been levied on them and is not being expended for the purposes stated in Section 5a, and (3) have requested a remedy, including a declaratory judgment.  Thus, the taxpayers have asserted a

concrete injury, the cause of that injury, and redressability. *Cuyahoga Cty. Bd. of Commrs.,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, at ¶ 22. *See also Ohio Trucking Assn. v. Charles*, 134 Ohio St.3d 502, 2012-Ohio-5679, 983 N.E.2d 1262, ¶ 7.

{¶ 16} Finally, the inclusion of the county engineers in the litigation does not alter our analysis. Without deciding whether the county engineers also have standing, it is sufficient for purposes of jurisdiction that at least one plaintiff has standing for the claims of the remaining plaintiffs to be heard and the court to proceed to decide the case on the merits. *See*, *e.g.*, *Cincinnati Golf Mgt. Inc., v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, 971 N.E.2d 929, ¶ 13.

### III. Analysis

{¶ 17} We now turn to the merits of this matter. Our analysis begins with a review of the relevant constitutional and statutory provisions, which are the Ohio Constitution, Article XII, Section 5a, and the CAT statute.

### A. The Constitutional Provisions

{¶ 18} Section 5a restricts the expenditure or use of revenue from certain taxes:

> No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than costs of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, costs for construction, reconstruction, maintenance and repair of public highways and bridges and other statutory highway purposes, expense of state enforcement of traffic laws, and expenditures authorized for hospitalization of indigent persons injured in motor vehicle accidents on the public highways.

{¶ 19} Section 5a was added to the Ohio Constitution in 1947 by initiative petition. It reflects the will of the state's citizens to have money obtained from taxes, fees, and

licenses relating to the operation of motor vehicles and motor-vehicle fuel expended exclusively for road projects, highway improvement, and other similar costs such as the enforcement of traffic laws. Ohio Secretary of State, Proposal Submitted by Initiative Petition, Certified Ballot Language, November 4, 1947; *see* 1982 Ohio Atty.Gen.Ops. No. 82-084 (Ohio Secretary of State's official pamphlet details the arguments in favor of and against the adoption of Section 5a). Until the amendment was adopted, money generated from motor-vehicle-fuel taxes, originally intended for the construction, maintenance, and repair of roads, was occasionally diverted for other uses, including relief of the poor during the Great Depression, the state's schools, and the general-revenue fund. H.B. No. 44, 111 Ohio Laws 294 (the state's first motor-fuel tax, imposed in 1925, was earmarked for highway-related purposes); H.B. No. 206, 112 Ohio Laws 508 (an additional motor-fuel tax, imposed in 1927, was also earmarked for highway purposes); Am.S.B. No. 3, 114 Ohio Laws, Part II, 14 (in 1932, motor-fuel-tax revenues were diverted to provide relief for the poor); H.B. No. 337, 115 Ohio Laws, Part I, 61 (in 1933, motor-fuel-tax revenues were diverted to provide further relief for the poor); Am.Sub.S.B. No. 354, 115 Ohio Laws 631 (in 1934, a tax on liquid fuel, including gasoline, was imposed and appropriated for school funding); Sub.H.B. No. 1, 118 Ohio Laws 7 (liquid-fuel-tax provisions amended to allocate revenue to the state's general-revenue fund).

{¶ 20} Section 5a was designed to stop the diversion of tax revenues intended for highway purposes to nonhighway-related purposes. As stated in the official publicity pamphlet for the amendment, the argument for the amendment included the following statement:

> This Amendment simply says you want your automobile license and gas tax money to go for better roads and streets.
>
> * * *
>
> Ohio originally promised that automobile license and gas tax funds would go for roads, streets, and related purposes. But temptation was too

> great and millions of these special tax dollars have been and are being
> spent for other purposes.

Ohio Secretary of State, Certified Ballot Language. The argument against the amendment included the following:

> This amendment places the Legislature in a strait-jacket and severely handicaps it in applying the revenue of the state to the needs of the state. The Legislature could not use highway revenues for emergency purposes and the revenues from such taxes will have to be spent for roads and streets and for no other purpose.

*Id.*

{¶ 21} In 1972, the Ohio Constitutional Revision Commission concluded that Section 5a requires that "all of the revenues derived from the registration of motor vehicles and from the taxes imposed on the purchase of fuels for motor vehicles be expended on the requirements of the state's highway system." Legislative Service Commission, Memorandum of the Ohio Constitutional Revision Commission Finance and Taxation Committee (Sept. 22, 1972), http://www.lsc.state.oh.us/ocrc/v4%20pgs%201647-1803%20finance-taxation%201804-2194%20elections-suffrage.pdf (accessed Dec. 5, 2012).

{¶ 22} Following the adoption of Section 5a, the provisions pertaining to the motor-vehicle-fuel tax and the liquid-fuel tax were revisited by the legislature in a special session of the General Assembly. The rate of the motor-vehicle-fuel tax was increased. Am.S.B. No. 356, 122 Ohio Laws 783. Then, the General Assembly repealed the liquid-fuel-tax provisions to bring the statutes into compliance with the newly adopted Section 5a. Am.S.B. No. 358, 122 Ohio Laws 807. These legislative changes ensured that the

level of taxation for road projects and highway improvement was not reduced, but the revenue resulting from these taxes was redirected in a manner compliant with Section 5a.

*B. The Adoption of the CAT*

{¶ 23} In 2005, the General Assembly enacted the CAT. Am.Sub.H.B. No. 66, 151 Ohio Laws, Part II, 2868. The CAT was enacted to replace the existing corporate-franchise and personal-property taxes. *See* R.C. 5733.01(G)(1) and (2) (phasing out the corporate-franchise tax); R.C. 5711.22(E), (F), and (G) (phasing out the personal-property tax); R.C. 5751.031 (phasing in the CAT).

{¶ 24} The CAT is levied "on each person with taxable gross receipts for the privilege of doing business in this state." R.C. 5751.02(A). Persons with less than $150,000 of gross receipts in a calendar year are exempted from paying the tax. R.C. 5751.01(E)(1). Persons making between $150,000 and $1 million in annual gross receipts pay a flat fee. R.C. 5751.03(B). Persons with annual gross receipts over $1 million owe "the product of two and six-tenths mills per dollar times the remainder of the taxpayer's taxable gross receipts." R.C. 5751.03(A).

{¶ 25} The term "gross receipts" includes amounts realized from sales. R.C. 5751.01(F).

{¶ 26} Excluded from the definition of "gross receipts" and, therefore, not subject to the CAT, are amounts paid by licensed motor-fuel dealers, licensed retail dealers, or licensed permissive motor-fuel dealers in state and federal motor-fuel excise taxes with respect to motor-fuel receipts. R.C. 5751.20(F)(2)(r). Further, the CAT statute excludes from gross receipts "[a]ny receipts for which the tax imposed by this chapter is prohibited by the constitution or laws of the United States or the constitution of this state." Former R.C. 5751.01(F)(2)(ff).[2] Revenues placed in the CAT-receipts fund are credited to the

---

2. This provision is presently codified as R.C. 5751.01(F)(2)(jj).

general-revenue fund, the school-district tangible-property-tax fund, and the local-government tangible-personal-property-tax repayment fund. R.C. 5751.20(B).[3]

### C. Presumption of Constitutionality

{¶ 27} As we have stated, " 'Laws are entitled to a "strong presumption of constitutionality," and the party challenging the constitutionality of a law "bears the burden of proving that the law is unconstitutional beyond a reasonable doubt." ' " *Ohio Grocers,* 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, at ¶ 11, quoting *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 41, quoting *Yajnik v. Akron Dept. of Health, Hous. Div.,* 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.

### D. Interpretation of the Phrase "Relating To" in Section 5a

{¶ 28} The question to be decided in the instant case is whether the CAT is a tax "relating to" motor-vehicle-fuel sales such that it implicates the prohibition in Section 5a on spending revenue for nonhighway purposes.

{¶ 29} The Constitution does not define the phrase "relating to," and appellants and the tax commissioner offer differing perspectives on the interpretation this court should give to that phrase. Appellants assert that the phrase "relating to" is broad and comprehensive. In contrast, the tax commissioner offers a narrower construction of the phrase "relating to" and contends that as used in Section 5a, the taxing statute (1) must explicitly refer to motor-vehicle fuel or (2) must specifically target highway users.

{¶ 30} We have previously held that the phrase "relating to" should be construed according to the plain and ordinary meaning given in the context of "political discussions and arguments," in order to carry out the intention and objectives of the people in making the Constitution, both as it was adopted and as it has been amended. *State ex rel. Keller v. Forney,* 108 Ohio St. 463, 466, 141 N.E. 16 (1923); *Hockett v. State Liquor Licensing Bd.,*

---

3. A portion of the CAT is also allocated to the revenue-enhancement fund to be "used to defray the costs incurred by the department of taxation in administering the tax imposed by this chapter and in implementing tax reform measures." R.C. 5751.20(B). R.C. 5751.20 was most recently modified by Am.S.B. No. 316, effective September 24, 2012. The most recent modification is not relevant to this appeal.

91 Ohio St. 176, 179-180, 110 N.E. 485 (1915). The text and history of Section 5a make clear that the purpose of the amendment is to ensure that any revenue raised from taxes relating to motor-vehicle fuels is expended only for the purposes specified in Section 5a and is not diverted to other governmental purposes. *See, e.g.*, *Stockberger v. Henry*, 134 Ohio St.3d 213, 2012-Ohio-5392, 981 N.E.2d 807. *See also* 1982 Ohio Atty.Gen.Ops. No. 82-084; Constitutional Revision Commission, Finance and Taxation Committee, *supra*.

{¶ 31} In view of the foregoing, the phrase "relating to" is plainly intended to be interpreted broadly. First, the drafters of the amendment employed a broad term, "derived from," to connect "moneys" with "fees, excises, or license taxes relating to registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles."[4] The evident purpose for using this particular terminology is to ensure that any revenue from these taxes is clearly within the scope of Section 5a's restriction on its use.

{¶ 32} Likewise, the term "relating to" broadly connects "fees, excises, or license taxes" to the sources from which the revenue is to be "derived," which are the "registration, operation, or use of vehicles on public highways, or to fuels used for propelling such vehicles." The evident purpose here was to ensure that these objects of fees and taxation would not be narrowed or diminished through any legislative efforts to statutorily redefine the terms as an attempted end-run to the amendment.[5]

{¶ 33} In this context, the CAT proceeds bear a logical and close connection to motor-vehicle fuels. The CAT proceeds are (1) money (2) derived (3) from an excise (4) on motor-vehicle-fuel sales. Although the tax is not a transactional tax, the amount of tax one must pay to the state because of the CAT is directly based on motor-vehicle-fuel-sales

---

4. *But see Ohio Trucking Assn. v. Charles,* 134 Ohio St.3d 502, 2012-Ohio-5679, 983 N.E.2d 1262, ¶ 1, concluding that the fees charged by the registrar of motor vehicles for the production of certified abstracts of driving records are not "related to" the registration, operation, or use of vehicles on public highways within the meaning of the Ohio Constitution, Article XII, Section 5a.

5. The amicus brief of the County Engineers Association of Ohio suggests that it would be possible for the General Assembly to divert virtually all the tax revenue raised from motor-vehicle fuels to general-fund purposes if Section 5a does not encompass tax revenue derived from an excise tax on motor-vehicle fuel such as the CAT.

revenue. Objectively, one is hard pressed to deny the close connection between the tax paid (moneys derived) and the source (excise on "fuels used") of that tax revenue. The close relationship is not severed because the excise is on the revenue derived from the sales of motor-vehicle fuel rather than the quantity of such fuel. There is still a close connection to the "fuels used for propelling vehicles" on public highways and the revenue generated to fall within the amendment's intended ambit. Consequently, we conclude that the CAT revenues derived from sales of motor-vehicle fuel relate to motor-vehicle fuel used for propelling vehicles on public highways as contemplated within Section 5a.

{¶ 34} *Ohio Grocers* is not dispositive of this appeal, contrary to the contention of the tax commissioner. In *Ohio Grocers*, we held that the CAT was not a transactional tax, that is, a tax on the sale or purchase of food, as contemplated by the Ohio Constitution, and, therefore, it did not violate the constitutional prohibitions against sales or excise taxes on food. *Id.*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, at ¶ 48. Instead, we held that the CAT was an excise tax that operated as a privilege-of-doing-business tax. *Id.* at ¶ 43. In this sense, the gross receipts that form the CAT base measure the value of the privilege that is being taxed. Consequently, the CAT was not a prohibited excise tax imposed on transactions of sales and purchases of food. *Id.* at ¶ 22-23, 43-49.

{¶ 35} The distinction between transactional and privilege-of-doing-business taxes that was central to the *Ohio Grocers* decision does not apply here, however. The text and meaning of the constitutional provisions controlling in *Ohio Grocers* are different from the text and meaning of the constitutional provisions now at issue. The Ohio Constitution, Article XII, Section 3(C) authorizes the enactment of excise and franchise (i.e., privilege) taxes, but then expressly limits those taxes: "no *excise* tax shall be levied or collected upon the sale or purchase of food for human consumption off the premises where sold." (Emphasis added.) The Ohio Constitution, Article XII, Section 13 similarly limits any authority for imposing certain taxes, specifying that "[n]o *sales* and other *excise* taxes shall be levied or collected" upon certain dealings that are transactional in nature. (Emphasis added.)

{¶ 36} Section 5a, however, uses the phrase "*relating to,*" and taxes imposed with respect to receipts from transactions in both motor fuel and other fuel have been characterized as a privilege tax. *Hickok Oil Corp. v. Evatt*, 141 Ohio St. 644, 653, 49 N.E.2d 937 (1943) (characterizing the motor-vehicle-fuel excise taxes and the now-repealed liquid-fuel tax as privilege taxes). The structure of Section 5a also contrasts with the constitutional provisions at issue in *Ohio Grocers*, which limit their applicability only to excise and transactional taxes—but not to privilege taxes. Section 5a does not provide any express limitations of its own applicability.

{¶ 37} These differences between Section 3(C) and Section 13 in *Ohio Grocers* and Section 5a in the present case mean that the holding in *Ohio Grocers* does not control here, and we hold that the instant case requires a different outcome.

### E. Summary

{¶ 38} The appellate court erred in holding that "the relationship [between the CAT and the taxes paid on the sales of motor-vehicle fuel] is too attenuated to find that the statutory allocation of the CAT moneys violates Section 5a." *Beaver Excavating*, 2011-Ohio-3649, at ¶ 34. Section 5a explicitly prohibits the expenditure of revenue derived from excises on motor-vehicle fuel for any purpose other than highway purposes. Because R.C. 5751.20 credits revenue collected from excise taxes on motor-vehicle fuel to purposes other than highway purposes, that provision of the CAT is unconstitutional.

### F. Remedy—Prospective Application

{¶ 39} Having concluded that the allocation of revenues from the CAT contained in R.C. 5751.20 violates the Ohio Constitution, we must determine the appropriate remedy to apply.

{¶ 40} We begin with the principle that the power to tax lies exclusively with the General Assembly pursuant to the general legislative grant conferred by the Ohio Constitution, Article II, Section 1. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 22; *Cincinnati v. Roettinger*, 105 Ohio St. 145, 154, 137 N.E. 6 (1922). The expenditure of the revenue derived from the CAT

relating to motor-vehicle-fuel sales for purposes other than those enumerated in Section 5a violates that section. However, the Constitution does not forbid the imposition of the CAT itself on the gross revenues derived from motor-vehicle-fuel sales. Consequently, the state may still collect the revenue derived from the CAT relating to motor-vehicle fuel, but the revenue may not be expended until the General Assembly properly allocates the revenue according to Section 5a.

{¶ 41} Appellants and many of their supporting amici curiae urge that should we find a Section 5a violation in the allocation of the revenue derived by the CAT, as we do today, we should apply our decision prospectively only. The taxpayers affirm that they do not seek, and do not claim as part of the relief sought from this court, any refund of taxes that they have paid pursuant to the CAT relating to motor-vehicle fuel. Nor do they seek an order requiring the state to replenish moneys derived from the CAT relating to motor-vehicle fuel that have already been expended for nonhighway purposes. The tax commissioner specifically contends that should this court hold that the revenue derived from the CAT may not constitutionally be expended except as allowed by Section 5a, the appropriate remedy is to prospectively enjoin the expenditure of the revenue until the General Assembly acts to remedy the statutory defect.

{¶ 42} The general rule with respect to the application of court decisions is that a "decision applies retrospectively unless a party has contract rights or vested rights under the prior decision." *DiCenzo v. A-Best Prods. Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, paragraph one of the syllabus. However, this court has observed that in certain circumstances, it has the authority to apply its decision prospectively only:

> An Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions, (2) whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision,

and (3) whether retroactive application of the decision causes an inequitable result. (*Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, adopted and applied.)

*Id*. at paragraph two of the syllabus.

{¶ 43} In this case, at the suggestion of the parties, we conclude that this decision is appropriate for prospective-only application.

{¶ 44} The first consideration in this regard is whether this decision establishes a new principle of law that was not foreshadowed in prior decisions. The issue presented in this case, the constitutionality of the allocation of the CAT revenues derived from motor-vehicle-fuel sales in a manner contrary to that provided for in Section 5a, is a matter of first impression before this court. The CAT legislation was enacted in 2005 and wholly replaced the existing corporate-franchise and personal-property taxes. In this respect, the contours of the recently enacted CAT, and the allocation of its revenues from sales of motor-vehicle fuel, are being presently determined. *Ohio Grocers* may have presented an issue in which the CAT was implicated, but as previously stated, the constitutional provisions at issue in *Ohio Grocers* are not pertinent to this appeal, and there are no other cases that foreshadowed the issue presented in this appeal.

{¶ 45} The second consideration is whether applying this decision retrospectively promotes or hinders the purposes behind the rule stated in this opinion. We conclude that retroactive application of this decision will neither promote nor hinder the purpose behind our determination that allocation and crediting of the CAT revenue must be made according the provisions of Section 5a. Regardless of whether this decision is given retroactive or prospective effect, the constitutional allocation of the CAT revenues remains the purpose of our decision today.

{¶ 46} The third inquiry considers whether retroactive application of this decision causes an inequitable result. In this regard, the taxpayers assert that approximately $140 million per year is diverted from public-highway purposes to general-revenue funds by the

application of the CAT statute. The fiscal effect of reallocating other state revenue to replace money that has been expended for nonhighway purposes would have a significant, consequential, and negative impact on the state's fiscal footing, which has been under sustained stress for several years during the course of the economic recession. *See* Ohio Office of Budget and Management, Executive Budget FY2012 and 2013, Section B, Economic Forecast Economic Overview and Forecast, http://obm.ohio.gov/ SectionPages/Budget/OperatingBudget.aspx(accessed Dec. 5, 2012) (stating that "the recovery from the 2007-2009 recession has been among the weakest on record").

{¶ 47} Clearly, the considerable sum of money implicated in this litigation and its significant effect on state finances satisfy the foregoing standard with respect to causing an inequitable result. Moreover, prospective application promotes equity to the extent that the CAT revenue previously collected and expended by the state is not subject to any refund requests by aggrieved taxpayers, including appellants or any others with claims pending. In this manner, all taxpayers are treated the same, and there is no unequal treatment between similarly situated taxpayers. In fact, appellants specifically state that they have not sought any refund of the CAT amounts paid on sales of motor-vehicle fuel, which provides further indication that appellants have no contract or vested rights that would require this decision to have retrospective application.

## IV. Conclusion

{¶ 48} We hold that the CAT revenues derived from an excise tax measured by the gross receipts from the sale of motor-vehicle fuel must be considered to be "related to" fuels used for propelling motor vehicles on a highway, within the meaning of Section 5a, and consequently, the excise tax at issue violates the Ohio Constitution to the extent that the revenue raised is used for purposes other than those specified in Section 5a. Accordingly, the allocation under R.C. 5751.20 of the commercial-activity-tax revenues derived from the gross receipts of the sale of motor-vehicle fuel to nonhighway purposes violates the Ohio Constitution, Article XII, Section 5a.

{¶ 49} We reverse the judgment of the court of appeals and remand for consideration of appellants' two remaining assigned errors, which the appellate court initially overruled based on its finding that the statutory allocation of the CAT money did not violate the Ohio Constitution, Article XII, Section 5a.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

O'DONNELL, J., dissents.

_____

Vorys, Sater, Seymour & Pease, L.L.P., and Thomas Ridgley, Anthony Ehler, Jeffrey Miller, and Robert Krummen, for appellants.

Michael DeWine, Attorney General, Stephen Carney and Matthew Hampton, Deputy Solicitors, and Julie Bringer and Barton Hubbard, Assistant Attorneys General, for appellee.

Peck, Shaffer & Williams, L.L.P., Thomas A. Luebbers, and Victor A. Linnebom, urging affirmance for amici curiae County Commissioners Association of Ohio, Ohio Municipal League, and Ohio School Boards Association.

Bricker & Eckler, L.L.P., and Mark Engel, urging affirmance for amici curiae Ohio Manufacturers' Association and Ohio Society of Certified Public Accountants.

Frederick A. Vierow, urging reversal for amicus curiae County Engineers Association of Ohio.

Brady, Coyle & Schmidt, Ltd., and Brian P. Barger, urging reversal for amici curiae Flexible Pavements, Inc., Ohio Aggregates and Industrial Minerals Association, and Ohio Ready Mix Concrete Association.

Timothy R. Fadel, urging reversal for amicus curiae International Union of Operating Engineers, Local 18.

Ice Miller, L.L.P., and Patrick A. Devine, urging reversal for amicus curiae Ohio Contractors Association.

Kegler, Brown, Hill & Ritter and Ralph Breitfeller, urging reversal for amicus curiae Ohio Equipment Dealers Association.

Jennifer Rhoads, urging reversal for amici curiae Ohio Petroleum Marketers and Convenience Store Association.

Roetzel & Andress, L.P.A., Thomas Rosenberg, and Michael Traven, urging reversal for amicus curiae American Council of Engineering Companies of Ohio.

_____