[Cite as *Bank of Am., N.A. v. Stewart*, 2014-Ohio-723.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | CASE NO.    13 MA 48 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DOUGLAS STEWART, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
Case No. 11CV3939.

JUDGMENT:                                           Affirmed.

APPEARANCES:
For Plaintiff-Appellee:                         Attorney Elizabeth Fuller
120 East Fourth Street, Suite 800
Cincinnati, Ohio  45202

For Defendants-Appellants:               Attorney Bruce Broyles
5815 Market Street, Suite 2
Boardman, Ohio  44512

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  February 14, 2014

VUKOVICH, J.

**{¶1}** Defendant-appellant Douglas Stewart appeals the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of plaintiff-appellee Bank of America, N.A. in its foreclosure action. Appellant first argues that the notice of default and acceleration did not sufficiently comply with the contractual requirements to notify the borrower of the amount due, of the right to reinstate, and of the right to assert in a foreclosure action the non-existence of default and any other defenses. We conclude that the notice provided to the borrower sufficiently complied with the contractually required notice.

**{¶2}** The second issue revolves around the substitution of "Bank of America as successor by merger to BAC Home Loan Servicing, LP, fka Countrywide Home Loans Servicing, LP" as the plaintiff where the originally named plaintiff, "BAC Home Loan Servicing, LP, fka Countrywide Home Loans Servicing, LP" had merged into Bank of America before the complaint was filed. Since the Supreme Court has ruled that a lack of standing cannot be cured, the borrower urges the trial court's jurisdiction was never invoked by a party with standing at the time the complaint was filed as the originally named plaintiff was a non-entity. We conclude that the legal existence of the absorbed company was more akin to a nonjurisdictional capacity to sue issue which is distinct from the issue of jurisdictional standing. For the following reasons, the judgment of the trial court is hereby affirmed.

STATEMENT OF THE CASE

**{¶3}** In 2006, Douglas Stewart signed a note to borrow $212,000 from Countrywide Home Loans, Inc. He and his wife, Caroline Stewart, signed a mortgage for their residence at 6630 Sturbridge Place in Poland, Ohio. After their February 2010 house payment, the Stewarts stopped making payments.

**{¶4}** On August 26, 2010, BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., who possessed the note endorsed in blank, provided notice of default. (The name of Countrywide Home Loans Servicing, LP had been amended in 2009 to BAC Home Loans Servicing, LP.) The notice stated that the Stewarts owe $10,731.54 in monthly charges plus some listed late charges for a total due of

$11,163.76. The letter provided that in order to cure the default, they had until September 25, 2010 to pay this amount plus any additional regular monthly payments, late charges, and fees which become due by then.

{¶5} On July 1, 2011, BAC Home Loans Servicing, LP was merged into Bank of America, N.A. The certificate of merger provided that BAC Home Loans Servicing, LP would not survive the merger.

{¶6} On December 2, 2011, Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. and its successors, assigned the mortgage to "Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, whose address is 7105 Corporate Drive, Mail Stop PTX-C-35, Plano, TX 75024 * * *."

{¶7} On December 13, 2011, a foreclosure complaint was filed in the Mahoning County Common Pleas Court against the Stewarts due to the mortgage; no personal judgment was sought due to bankruptcy proceedings. The plaintiff was listed as BAC Homes Loans Servicing, LP fka Countrywide Home Loans Servicing, LP with the address of 7105 Corporate Drive, Mail Stop PTX-C-35 Plano, TX 75024. Attached to the complaint was the note, the mortgage, the assignment, and the various certificates concerning the company history, including the merger of said plaintiff into Bank of America, N.A. some five months earlier.

{¶8} On March 2, 2012, before any answer was filed, the named plaintiff "BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP" moved for an order substituting "Bank of America, N.A. as successor by merger to BAC Homes Loans Servicing, LP fka Countrywide Home Loans Servicing, LP" as the party plaintiff. The trial court granted this request.

{¶9} In July of 2012, the bank sought default judgment, but the court permitted counsel for Mr. Stewart to file an answer instanter. The bank then moved for summary judgment. The bank attached an affidavit as to the default and the amount due. The affidavit authenticated the attached note, mortgage, assignment, and the August 26, 2010 notice of default.

{¶10} In opposition, Mr. Stewart argued that the notice of default did not sufficiently comply with paragraph 6(C) of the note or paragraph 22 of the mortgage. It was claimed that the statement as to the amount due to cure the default was not specific enough because although it provided the overdue amount of $11,163.76, it required the borrower to calculate charges accruing thereafter. It was also urged the language used when mentioning reinstatement and defenses to foreclosure did not sufficiently provide notice of those rights.

{¶11} The bank replied that the notice satisfied the contractual terms and described the borrower's argument as a "mere quibble over semantics." On March 19, 2013, the trial court granted summary judgment in favor of the bank. Mr. Stewart [hereinafter the borrower] filed a timely notice of appeal.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

{¶12} The borrower sets forth two assignments of error, the first which contends:

{¶13} "The trial court erred in granting summary judgment in favor of Appellee where there is at least a genuine issue of material fact in dispute as to whether Appellee complied with the condition precedent of a notice of default."

{¶14} This assignment deals with the arguments raised in the opposition to the summary judgment motion as to the whether the notice of default was contractually sufficient under paragraph 6(C) of the note and paragraph 22 of the mortgage. First, the borrower argues that the statement in the notice as to the amount due to cure the default is not specific enough because although it provided the overdue amount of $11,163.76, it also required payment of "any regular monthly payment or payments, plus late charges, fees and charges which become due on or before September 25, 2010" and thus required the borrower to calculate these potential amounts.

{¶15} In support, the borrower relies only upon a portion of the note providing that after default, the bank may send a written notice: "telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest

that I owe on that amount."  *See* ¶ 6(C) of the Note (and providing that the date must be at least 30 days after the date the notice is mailed or delivered by other means). *See also* ¶ 22 of the Mortgage (stating that the notice shall specify the action required to cure the default).

**{¶16}**  The bank describes this as a conclusory argument without legal support and urges that the notice was facially sufficient.  The borrower cites nothing on point to this issue.  We conclude that the notice sufficiently complies with contractual terms.

**{¶17}**  The notice provides the overdue amount of $10,731.54 plus listed late charges for a total of $11,163.76.  The notice states that this "total due" is "[t]he total amount now required to reinstate the loan as of the date of this notice * * * ."  The specific amount provided was the actual amount due on the date the notice was sent. At the point of notice, nothing else was overdue.  The bank cannot predict when the borrower will pay the overdue amount.  The borrower knows his payment due date and knows the amount of his regular monthly payments.  Nothing in the contract requires the bank to provide a schedule of predictions.  In accordance, the notice sufficiently complied with the language of paragraph 6(C) of the note.

**{¶18}**  The borrower's next argument concerns the portion of paragraph 22 of the mortgage, which provides:  "The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure."  As to these rights, the bank's notice stated:

> "If the default is not cured on or before September 25, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time.  As such, the failure to cure the default may result in the foreclosure and sale of your property.
>
> "You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due

are paid within the time permitted by law. However, [the bank] shall be entitled to collect all fees and costs incurred by [the bank] in pursuing their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have"

**{¶19}** The borrower contends that use of the word "may" when advising of the right to cure the default after acceleration and the right to assert the lack of a default or other defense was insufficient compliance with the contractual obligation to advise of those rights. And, as to the latter right, the borrower complains that the statement about "the right to bring a court action" suggested that the borrower had to sue to raise any defenses rather than merely present them in the already-existing foreclosure action.

**{¶20}** Paragraph 19 of the Mortgage provides that the borrower has the right to reinstate after acceleration if the borrower meets certain conditions, which are then listed therein. Thus, when paragraph 22 states that the notice shall inform the borrower of the right to reinstate, it does not refer to an absolute right, but a right subject to paragraph 19. Accordingly, the notice's use of "may" and reference to the loan documents does not insufficiently comply with the requirement to "inform the borrower of the right to reinstate after acceleration."

**{¶21}** Likewise, there is no problem with the use of the word "may" in connection with the right to assert non-existence of default or other defense. This is because a borrower only has the right to assert the non-existence of a default, for instance, if such is truly the case. As for the notice's mention of bringing a court action to assert the non-existence of default or any other defense the borrower may have to acceleration and foreclosure, it specifies the possible defense of non-existence of a default and as per the contract also discloses that other defenses exist, specifying that they are "defenses to acceleration and foreclosure." Furthermore, overlooked in the borrowers' argument is the fact that the recitation of the defenses was made *in the context* of the bank speaking of its own initiation of

foreclosure proceedings. We conclude that the letter did not violate the contractual requirement that the notice inform the borrower of the right to assert a defense in the foreclosure proceeding. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

**{¶22}** Appellant's second assignment of error provides:

**{¶23}** "The Court of Appeals should vacate the trial court's judgment entry as the complaint was filed by a non-entity and is therefore a nullity."

**{¶24}** The complaint was filed by "BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP" whose address was listed as 7105 Corporate Drive, Mail Stop PTX-C-35, Plano, TX 75024. At the time the complaint was filed, BAC Home Loans Servicing, LP had already been merged into Bank of America, N.A., who was the holder of the note and mortgage.

**{¶25}** The assignment of the mortgage attached to the complaint showed that it had been assigned to "Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, whose address is 7105 Corporate Drive, Mail Stop PTX-C-35, Plano, TX 75024 * * *," the same address as the originally named plaintiff. The court permitted the substitution of the named plaintiff by adding to the beginning of the plaintiff's name: "Bank of America, N.A. as successor by merger to * * *".

**{¶26}** The borrower asserts for the first time on appeal that the complaint was a nullity since it was filed by a plaintiff that did not exist and that substitution of "Bank of America, N.A * * *" as the party plaintiff was thus not permissible. To avoid the doctrine of waiver, the borrower states that a judgment based upon a complaint which is a nullity is a void judgment that can be attacked anytime.

**{¶27}** In support, the borrower cites to a case where a guardian filed suit on behalf of a recently deceased ward, the estate was later substituted as the plaintiff, the case was voluntarily dismissed, and the case was thereafter refiled on the assumption that the refiling related back for purposes of the statute of limitations. *Whitley v. River's Bend Health Car*e, 183 Ohio App.3d 145, 2009-Ohio-3366, 916 N.E.2d 515 (4th Dist.). The Fourth District pointed out that the death of the ward

terminates the powers of the guardian. *Id.* at ¶ 15, citing *Simpson v. Holmes* (1922), 106 Ohio St. 437, 140 N.E. 395. The Fourth District then concluded that an action brought by a guardian after the ward's death is a nullity and a refiled action cannot relate back to an action that was a nullity. *Id.* at ¶ 14-17 (opining that the legal authority to commence a suit is more than a mere pleading technicality).

{¶28} The borrower also cites to a Colorado appellate case. In *Black Canyon*, the county commissioners issued a decision on January 22, 2002, approving a gravel permit which had been opposed by an association of landowners. *Black Canyon Citizens Coalition, Inc. v. Board of Cty. Commrs. of Montrose Cty.* (Colo.App. 2003), 80 P.23d 932. In order to seek an administrative appeal, a complaint had to be filed in the trial court within thirty days. The association was in the process of incorporating, but the articles of incorporation were rejected on February 19. An administrative appeal of the permit was filed in the not-yet-existing corporation's name on February 20. The refiled articles of incorporation were accepted on February 22. The Colorado appellate court held that there could be no action filed by the corporation until it was actually incorporated, concluding that the complaint filed a by non-entity was a nullity and thus void ab initio. *Id.*

{¶29} Civ.R. 25(C) provides: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." The borrower suggests that this contemplates a transfer of interest that occurs after the original party filed the suit.

{¶30} Civ.R. 21, entitled "Misjoinder and nonjoinder of parties," provides that misjoinder is not ground for dismissal and that parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

{¶31} Civ.R. 17(A) states that every action shall be prosecuted in the name of the real party in interest but then provides: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for * * * substitution of, the real

party in interest [which] shall have the same effect as if the action had been commenced in the name of the real party in interest." Civ.R. 17(A).

**{¶32}** Regarding this rule and in support of the contention that the naming issue here cannot be corrected as the trial court's jurisdiction was never invoked, the borrower cites the Supreme Court's recent case involving a bank filing a foreclosure action before the note and mortgage had been assigned to it. *See Federal Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214. In *Schwartzwald*, cross-motions for summary judgment were filed, wherein the borrower argued that the plaintiff-bank lacked standing. The trial court granted summary judgment for the bank; the appellate court affirmed, stating that standing is not a jurisdictional prerequisite as it can be cured by substituting the real party in interest under Civ.R. 17(A) and holding that the bank cured the defect by having the note and mortgage assigned to it prior to the entry of judgment. *Id.* at ¶ 15. The Ohio Supreme Court reversed, finding that where the bank fails to establish an interest in the note or mortgage at the time the complaint was filed, it had no standing to invoke the jurisdiction of the common pleas court. *Id.* at ¶ 28.

**{¶33}** In explaining its decision, the Court first pointed to Article IV, Section 4(B) of the Ohio Constitution which provides that the common pleas court has "such original jurisdiction over all justiciable matters * * * as may be provided by law." *Id.* at ¶ 20. The question of standing involves the question of whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Id.* at ¶ 21. Standing was described as part of the "common understanding" of what it takes to make a justiciable case. *Id.* at ¶ 22.

**{¶34}** The Court explained that it has previously recognized that standing is a "jurisdictional requirement" and that a party who lacks standing cannot "invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." *Id.* at ¶ 22. Moreover, standing to invoke the jurisdiction of the court depends on the state of things at the time the complaint is filed so that post-filing events concerning standing can be disregarded. *Id.* at ¶ 24-27.

**{¶35}** The Court reviewed Civ.R. 17(A) and held that this real party in interest rule deals with proper party joinder rather than standing. *Id.* at ¶ 32-34. The Court stated that a party cannot rely on a procedural rule to cure a lack of standing at the commencement of litigation and thus cannot use Civ.R. 17(A) to cure a lack of standing by obtaining an interest in the subject of the litigation after commencement of the action. *Id.* at ¶ 37-40 (lack of standing at commencement of foreclosure action requires dismissal, albeit without prejudice).

**{¶36}** The Court concluded: "It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court." *Id.* at ¶ 41. "Civ.R. 17(A) does not change this principle, and a lack of standing at the outset of litigation cannot be cured by receipt of an assignment of the claim *or by substitution of the real party in interest.*" (Emphasis added). *Id.*

**{¶37}** The bank points out that it is undisputed here that it was the holder of the mortgage and note prior to the filing of the complaint. This distinguishing fact is not wholly dispositive. For instance, the statement of the Supreme Court that standing cannot be cured by a post-filing assignment continued by adding "or by substitution of the real party in interest." Thus, we still must address the issues regarding legal existence versus standing. The bank urges that naming Bank of America, N.A.'s predecessor on the original complaint was not equivalent to a lack of standing because the two entities were one by the merger. This position is supportable.

**{¶38}** Accepting here that the lack of jurisdiction due to a lack of standing spoken of in *Schwartzwald* is a precursor to subject matter jurisdiction issue that can be raised at any time,[1] the present case is distinguishable. This case involves the

---

[1] Many courts believe that *Schwartzwald* equates standing with a lack of subject matter jurisdiction. *See, .e.g., Bank of New York Mellon v. Blouse*, 12th Dist. No. CA2013-02-002, 2013-Ohio-4537; *Federal Home Loan Mortgage Corp. v. Rufo*, 11th Dist. No. 2012-A-0011, 2012-Ohio-5930. Some courts seemingly do not. *See, e.g., Wells Fargo Bank, Natl. Assn. v. Elliott*, 5th Dist. No. 13 CAE 03 0012, 2013-Ohio-3690, ¶ 13-14; *Deutsche Bank Nat'l Trust Co. v. Whiteman*, 10th Dist. No. 12AP-536, 2013-Ohio-1636. In *Whiteman*, the Tenth District held that lack of standing cannot be challenged in Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, but in a later

mistaken naming of a company absorbed by merger as plaintiff and the substitution of the remaining company as plaintiff.

**{¶39}** The Supreme Court once held that where a company had been merged out of existence more than two years before the employees left, non-compete agreements expired when the employees left and the company remaining in the merger had no right to enforce them. *Acordia of Ohio, L.L.C. v. Fishel*, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814 ("*Acordia I*"). The Supreme Court then reconsidered its decision and held that the remaining company had the ability to enforce judgments as if it stepped into the shoes of the absorbed company. *Acordia of Ohio, L.L.C. v. Fishel*, 133 Ohio St.3d 356, 2012-Ohio-4648, 978 N.E.2d 823 ("*Acordia II*").

**{¶40}** The Court stated that a portion of the analysis in *Acordia I's* lead opinion was based upon a misreading of language from another case that "a merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *Id.* at ¶ 6, citing *Morris v. Invest. Life Ins. Co.*, 27 Ohio St.2d 26, 31, 272 N.E.2d 105 (1971). The Court explained that this reading of *Morris* was incomplete. *Id.* at ¶ 7. Although one company may cease to exist as a *separate* business entity after the merger, because the absorbed company becomes part of the resulting company after the merger, the absorbed company is not completely erased from existence. *Id.*

**{¶41}** Although *Acordia* is not a case on point and was explicitly limited to non-compete agreements after a merger, the distinctions are instructive here.

---

case, they seemed to recognize that standing is related to subject matter jurisdiction. *See Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 12AP-987, 2013-Ohio-4057, ¶ 14-15 (noting that standing is jurisdictional but capacity to sue is different as it does not affect subject matter jurisdiction).

The language used by the Ohio Supreme Court in *Schwartzwald*, dealing with standing being necessary in order to invoke the court's jurisdiction and that a court has jurisdiction only over justiciable matters which require a party with standing, suggests they are equating standing to subject matter jurisdiction or to something that comes even before subject matter jurisdiction and thus affects it, and the *Beaver Excavating* case discussed infra confirms that standing can be raised for the first time on appeal. *Beaver Excavating v. Testa.* 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, fn.1.

Specifically, the absorbed company may no longer exist as a *separate* entity (with emphasis on separate), but it is not erased from existence as it was absorbed into the remaining company. Even if we were to agree with the Colorado case cited by the borrower, it is distinguishable because the corporation did not yet exist there. *Whitley* is also distinguishable as the guardianship is wholly terminated on the death of the ward and that court found the guardian no longer has an interest and no longer has standing to sue in a case involving injury to a ward. However, a company that does not survive a merger is actually absorbed into and becomes one with the remaining company and still has an interest in the company's affairs because it is now that company.

**{¶42}** Based upon these merger principles and the distinctions between standing and capacity analyzed below, we conclude that a corporation's accidental use of the absorbed company's name (a company that was once its subsidiary) to caption a case would not totally nullify the complaint and any judgment that was later issued in that case. Even if an absorbed company can no longer be used as the plaintiff in a lawsuit, the issue can be waived and is subject to correction (as it was here). That is, an absorbed company's status appears to raise an issue concerning legal existence or capacity to sue rather than standing.

**{¶43}** Standing in the jurisdictional sense is distinct from the issue of lack of capacity to sue, which is not jurisdictional. *Beaver Excavating v. Testa,* 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, fn.1 (where the tax commissioner failed to raise certain arguments below, the Supreme Court stated: "We will address the standing argument in its jurisdictional aspect only. To the extent that the tax commissioner's argument relates to nonjurisdictional questions of the capacity to sue or whether these appellants properly stated a claim for declaratory relief, we regard such issues as either waived or merged into the merits issue."). *See also Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. No. 12AP-987, 2013-Ohio-4057, ¶ 14-15.

**{¶44}** A person lacks standing if he does not have a real interest in the subject matter of the action; a person has such an interest if he has suffered an injury

by the defendant. *Schwartzwald*, 134 Ohio St.3d 13 at ¶ 22, 36. As the absorbed company becomes part of the remaining company, it suffered the injury suffered by the remaining company. A person can have standing but have no capacity to sue.

{¶45} "Capacity to sue or be sued does not equate with the jurisdiction of a court to adjudicate a matter; it is concerned merely with a party's right to appear in a court in the first instance." *National City Mtge. v. Skipper*, 9th Dist. No. 24772, 2009-Ohio-5940, ¶ 11-13. Capacity to sue involves a determination as to whether an individual may properly sue, either as an entity or on behalf of another. *Mousa v. Mt. Carmel Health Sys.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 13 (decedent's parent, who had not yet been appointed administrator at the time the complaint was filed, lacked capacity to sue but possessed standing). Capacity to sue deals with a person's eligibility to commence the action and is typically determined without regard to the claims being asserted. *Wanamaker v. Davis*, 2d Dist. No. 2005-CA-151, 2007-Ohio-4340, ¶ 42.

{¶46} "When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment * * *." Civ.R. 9(A). *See also* Civ.R. 8(C) (defendant must set forth in the answer any matter constituting an avoidance or affirmative defense); Civ.R. 12 (set forth every defense in the responsive pleading).

{¶47} Thus, a capacity challenge is waived if a party does not specifically raise it in his answer. *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 30 (incapacity to sue due to mental illness). Legal existence of the plaintiff is akin to capacity to sue; it is part of the same rule, and it can also be waived by the failure to assert it. *RLB Engineering v. McGaw*, 9th Dist. No. 22579, 2006-Ohio-655, ¶ 10-11. *See also Skipper*, 9th Dist. No. 24772 at ¶ 11-13 (defendant's argument that National City was a fictitious unregistered trade name and thus could not bring suit was a capacity to sue defense, which was waived below, rather than a standing issue, and thus the contention would not be addressed because it was waived below).

**{¶48}** We also point out that even a dissolved company can do such acts as are required to wind up its affairs, which may further support the position that a company's legal existence is not a standing issue.  R.C. 2701.88(A).)  It should also be recognized that this is not a case involving a statutory suit that defines who must file a certain suit.

**{¶49}** In conclusion, the answer did not raise an issue of capacity to sue due to the named plaintiff no longer existing as a separate business entity; nor was it raised in response to the request for summary judgment.  In fact, the naming issue was successfully corrected prior to the filing of the answer.  Even if the absorbed company lacked the capacity to sue or lacked a legal existence as a separate business entity, it did not lack standing as it had an interest in the action by virtue of its being merged into the substitute plaintiff and its resultant injury by the defendant's actions as part of the remaining company.  Thus, the issue is not one that can be raised for the first time on appeal (and would not have succeeded if raised below as the naming issue was corrected).  In other words, the issue was waivable, curable, and in fact cured.  This assignment of error is overruled.

**{¶50}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.


Waite, J., concurs.
DeGenaro, P.J., concurs.