[Cite as *Howard Hanna v. Ford*, 2025-Ohio-5524.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HOWARD HANNA, DBA HOWARD  :
HANNA PROPERTY MANAGEMENT,  :

       Plaintiff-Appellee,  :       No. 115086

       v.  :

JOHNNITA FORD,  :

       Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Civil Appeal from the Shaker Heights Municipal Court
Case No. 23-CVG-01591

---

### *Appearances:*

John Wood, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} In this accelerated appeal, defendant-appellant Johnnita Ford ("Ford") appeals the trial court's judgment in favor of plaintiff-appellee Howard Hanna, dba Howard Hanna Property Management ("HH dba HHPM") (separately referring to "Howard Hanna," "Howard Hanna Property Management," and

"Howard Hanna Real Estate Services" for the purposes of Ford's argument). Upon review, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2} In November 2023, HH dba HHPM filed a two-count complaint against Ford, the tenant of a property located on Kendall Road in Shaker Heights ("the property"). Count 1 asserted a forcible-entry-and-detainer claim from Ford's alleged failure to pay rent. Count 2 asserted a money-damages claim for any unpaid or accruing rental payments, fees, and utility bills.

{¶ 3} Relevant to this appeal, the complaint asserted that William and Blair Steck ("the Stecks") owned the property and HH dba HHPM managed it on their behalf. HH dba HHPM attached the following exhibits to its complaint: a Property Summary Report, confirming the Stecks' ownership of the property beginning in August 2022; a certified Ohio Secretary of State document listing Howard Hanna's registered-trade-name filings and identifying Smythe, Cramer Co., as the agent/registrant; the lease agreements for tenancy terms spanning from July 2020 through June 2022 between then-owner Search Management, LLC and Ford; notice that Search Management, LLC was not extending the lease expiring in June 2022 because the property was being offered for sale; and a three-day notice to leave the property issued by Howard Hanna Property Management and served in October 2023.

{¶ 4} Ford filed a notice of appearance of counsel and an answer. The answer generally denied the allegations of the complaint and raised one affirmative defense: the statute of frauds.

{¶ 5} An eviction trial was held before a magistrate in February 2024. According to the magistrate's decision, Ford did not offer any evidence to rebut HH dba HHPM's contention that she failed to pay rent. Rather, Ford asserted several defenses, including that 1) HH dba HHPM was an unregistered, fictitious name and was prohibited from bringing suit under Ohio law; 2) HH dba HHPM could not file suit as an agent of the owner where the agent was not listed in the governing lease; and 3) HH dba HHPM's three-day notice was defective because it was from Howard Hanna Property Management.

{¶ 6} The magistrate found that Howard Hanna was the plaintiff in this matter, was registered with the Ohio Secretary of State, and was permitted to bring an action under Ohio law. The magistrate further found that Search Management, LLC sold the property to the Stecks in August 2022, the Stecks hired HH dba HHPM to manage the property, and HH dba HHPM was permitted to seek and obtain a judgment under R.C. 1923.01 as a "landlord." Finally, the magistrate found that because Howard Hanna Property Management delivered the three-day notice and HH dba HHPM filed the complaint, R.C. 1923.04(A)'s jurisdictional prerequisites were not met. Accordingly, the magistrate recommended judgment in Ford's favor as to HH dba HHPM's first cause of action.

**{¶ 7}** The trial court adopted the magistrate's decision and dismissed the forcible-entry-and-detainer claim without prejudice.[1] HH dba HHPM's money-damages claim remained pending. A litigation schedule was established, including discovery and dispositive motion deadlines; trial was set; and the matter was referred to the magistrate. Prior to trial, the parties filed briefs describing the case, identifying witnesses, listing exhibits, and stating anticipated issues.

**{¶ 8}** Trial was held in July 2024 on HH dba HHPM's second cause of action. Testimony was offered by the property manager for HH dba HHPM and Howard Hanna Real Estate Services, and exhibits were submitted by both parties. The property manager testified that she believed Howard Hanna, Howard Hanna Property Services, and Howard Hanna Real Estate Services were "all . . . one."

**{¶ 9}** A magistrate's decision was issued, making findings of fact and conclusions of law based on the evidence presented at trial. The magistrate found that, after their purchase of the property in August 2022, the Stecks hired Howard Hanna Real Estate Services to be their agent and property manager. The Stecks directed Ford to make payments to Howard Hanna based on their rental agreement. Howard Hanna and Howard Hanna Real Estate Services were registered trade names of Smythe, Cramer Co., which was a for-profit corporation registered to do business in Ohio. Ford made several payments to Howard Hanna but did not make

---

[1] Howard Hanna refiled its forcible-entry-and-detainer action in Shaker Heights M.C. No. 24CVG00359, which ultimately resulted in Ford's removal from the property in July 2024. An appeal was filed from the trial court's judgment; however, the appeal was dismissed as moot after possession was restored to Howard Hanna. *See Howard Hanna v. Ford*, No. 113874 (8th Dist. Aug. 1, 2024).

full, timely payments. The magistrate concluded that Ford breached her lease and owed unpaid rent and late fees. The magistrate further concluded that HH dba HHPM was permitted to bring the action because Howard Hanna and Howard Hanna Real Estate Services, the agent and property manager hired by the Stecks, were not separate legal entities from Smythe, Cramer Co.

{¶ 10} The magistrate also addressed Ford's statute-of-frauds defense, finding that it had no merit. The magistrate then found that Ford "attempt[ed] to bootstrap other affirmative defenses, such as failure to bring the action by the real party in interest, standing, or capacity" and concluded that those defenses were waived since she failed to raise them in her answer.

{¶ 11} Ford objected to the magistrate's decision. Relevant to this appeal, Ford challenged the magistrate's finding regarding Ford's "bootstrapped" affirmative defenses, arguing that she did not waive her lack-of-standing defense. Ford also objected to the magistrate's finding that HH dba HHPM was permitted to bring suit. HH dba HHPM filed a response, requesting that Ford's objections be overruled. Ford filed a reply and reasserted her arguments.

{¶ 12} The trial court thoroughly analyzed Ford's objections to the magistrate's decision in a subsequent order. The trial court found that Ford's standing defense was based on whether HH dba HHPM had capacity to sue and was the real party in interest, noting:

> [Ford] acknowledges that the [p]roperty['s] owners, the Stecks, have standing. [Ford] does not object to the [m]agistrate's finding that Howard Hanna and Howard Hanna Real Estate Services are registered

trade names of Smythe, Crame Co. [Ford] likewise does not object to the [m]agistrate's finding that Smythe, Cramer Co. doing business as Howard Hanna Real Estate Services entered into a contract with William Steck wherein [he] assigned the right to collect rent and bring legal action to collect those rents. However, [Ford] argues that Howard Hanna and Howard Hanna Property Management "could only appear as [the p]laintiff if it could establish a representative relationship with [the Stecks] per Civ.R. 17, R.C. 1329.10, or R.C. 5321.01[.]" . . . Thus, it is clear that [Ford's] "standing" defense is predicated on other defenses, which must be properly asserted.

The trial court found that Ford's answer did not include affirmative defenses for lack of capacity or failure by the real party in interest to bring the action. The trial court further found that Ford was permitted to engage in discovery and properly raise any applicable defenses prior to trial; however, she did not seek leave to amend her answer. The trial court concluded that Ford could not "recast her 'standing' defense" and that her failure to timely raise and assert those defenses resulted in waiver. Accordingly, the trial court overruled Ford's objections and adopted the magistrate's decision.

{¶ 13} Ford appeals, raising a single assignment of error for review.

**Assignment of Error**

It was an error of law to grant judgment for [HH dba HHPM].

**II.    Law and Analysis**

{¶ 14} Ford limits her appeal to the issue of standing. First, Ford asserts that standing is a jurisdictional requirement that can be raised at any time during the proceeding and cannot be cured by later substitution of the real party in interest. Ford then challenges HH dba HHPM's capacity to sue, arguing that an entity doing

business as a trade name is limited to enforcing its own contracts and may not enforce contracts executed by another trade name solely because both trade names are used by a common corporation. Throughout her appellate brief, Ford acknowledges that suit could have properly been brought by the Stecks, as owners of the property and parties to the lease, or by Howard Hanna Real Estate Services or Smythe, Cramer Co., dba Howard Hanna Real Estate Services, as an agent and property manager.

{¶ 15} As an initial matter, we identify the statutory provision governing HH dba HHPM's money-damages claim. R.C. 1923.081 addresses the joinder of causes of action in a forcible-entry-and-detainer case and provides:

> A trial in an action for forcible entry and detainer for residential premises . . . may also include a trial on claims of the plaintiff for past due rent and other damages under a rental agreement, unless for good cause shown the court continues the trial on those claims. For the purposes of this section, good cause includes the request of the defendant to file an answer or counterclaim to the claims of the plaintiff or for discovery, in which case *the proceedings shall be the same in all respects as in other civil cases.*

(Emphasis added.) Thus, we analyze the trial court's disposition of HH dba HHPM's second cause of action as we would any other civil case and apply the applicable rules of civil procedure.

{¶ 16} Next, we address Ford's contention that standing presents jurisdictional issues that can be raised at any time. In support of her argument, Ford relies on *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017. In *Schwartzwald*, the Ohio Supreme Court noted in a parenthetical that "'the issue of

standing, inasmuch as it is jurisdictional in nature, may be raised at any time during the pendency of the proceedings.'" *Id.* at ¶ 22, quoting *New Boston Cake Corp. v. Tyler*, 32 Ohio St.3d 216 (1987). There, the plaintiff conceded that there was no evidence that it suffered any injury at the time it commenced the underlying foreclosure action. *Id.* at ¶ 28. The Ohio Supreme Court found that because it failed to establish an interest in the note or mortgage at the time it filed suit, the plaintiff had no standing to invoke the jurisdiction of the trial court. *Id.* The Court explained:

> It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court. Civ.R. 17(A) does not change this principle, and a lack of standing at the outset of litigation cannot be cured by receipt of an assignment of the claim or by substitution of the real party in interest.

*Id.* at ¶ 41. The Court concluded that a trial court could not substitute a real party in interest for another party if no party with standing invoked its jurisdiction in the first instance. *Id.* at ¶ 38.

{¶ 17} However, in *Bank of Am., N.A. v. Kuchta,* 2014-Ohio-4275, ¶ 18, the Ohio Supreme Court revisited its holding in *Schwartzwald* and provided further guidance regarding "[t]he general term 'jurisdiction'[, which] can be used to connotate several distinct concepts, including jurisdiction over the subject-matter jurisdiction over the person, and jurisdiction over a particular case." The Court explained that "[s]ubject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases" and "is determined without regard to the rights of the individual parties involved in a particular case." *Id.* at ¶ 19. The Court noted

that a trial court's subject-matter jurisdiction can be challenged at any time. *Id.* at ¶ 17. The Court then clarified that subject-matter jurisdiction is distinct from a trial court's jurisdiction over a particular case, which "refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction" and "involves consideration of the rights of the parties." *Id.* at ¶ 19.

{¶ 18} With these concepts in mind, the Ohio Supreme Court held that "a [trial] court that has subject-matter jurisdiction over an action does not lose that jurisdiction merely because a party to the action lacks standing." *Id.* at ¶ 17. The Court explained:

> Standing is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court — even a court of competent subject-matter jurisdiction — over the party's attempted action. But an inquiry into a party's ability to *invoke* a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction.

(Emphasis in original.) *Id.* at ¶ 22 (finding that lack of standing cannot support a Civ.R. 60(B)(3) motion for relief from judgment after the defendant failed to appeal from a trial court's judgment in a foreclosure action, even if the plaintiff's assertion of standing was patently false). This court recently discussed *Kutcha*'s distinction, stating: "In other words, lack of standing is not a basis to collaterally challenge a final judgment, but it remains a jurisdictional prerequisite that must be established if the objection is *timely* preserved." (Emphasis in original.) *Paul v. Kingsbury*, 2024-Ohio-5819, ¶ 9 (8th Dist.) (noting that a challenge to plaintiff's standing was timely preserved when the defendant included the lack of standing as an affirmative

defense in her answer and the issue was challenged on direct appeal). Thus, we decline to adopt Ford's broad conclusion that lack of standing always presents a nonwaivable jurisdictional issue that can be raised at any point in a proceeding.

{¶ 19} Finally, we analyze the substance of Ford's challenge. We agree with the trial court and find that Ford's lack-of-standing argument does not present a nonwaivable-jurisdictional question; rather, Ford challenges HH dba HHPM's capacity to sue and questions whether HH dba HHPM is the real party in interest — both of which are waivable defenses. *Brantley, Inc. v. Tornstrom,* 2024-Ohio-2908, ¶ 15 (8th Dist.) (finding that defenses challenging a party's capacity to bring an action or whether that party is the real party in interest may be waived).

{¶ 20} Capacity to sue merely concerns a party's right to appear in court, is determined without regard to the claims being asserted, and does not impact a trial court's jurisdiction to adjudicate a matter. *CapitalSource Bank v. Hnatiuk*, 2016-Ohio-3450, ¶ 24 (8th Dist.), citing *Bank of Am., N.A. v. Stewart*, 2014-Ohio-723, ¶ 44-46 (7th Dist.). Civ.R. 9(A) provides:

> It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, *he shall do so by specific negative averment*, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

(Emphasis added.) Thus, lack of capacity to sue is waived if a party does comply with Civ.R. 9(A) and fails to specifically raise the defense in an answer. *Hnatiuk* at

¶ 25, citing *State ex rel. Downs v. Panioto*, 2006-Ohio-8, ¶ 30; *Campolieti v. Cleveland Dept. of Pub. Safety*, 2013-Ohio-5123, ¶ 18 (8th Dist.) (appellant waived the defense of lack of capacity where the answer was devoid of any specific negative averment under Civ.R. 9(A)); Civ.R. 8(C) (establishing that any matter constituting an avoidance or affirmative defense must be raised in a party's answer).

{¶ 21} Civ.R. 17(A) governs the procedural requirement that "every action shall be prosecuted in the name of the real party in interest." "A real party in interest is one who has a real interest in the subject-matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefitted or injured by the outcome of the case." (Cleaned up.) *First Rehab. Funding, LLC v. Milton*, 2025-Ohio-2677, ¶ 27 (8th Dist.). Relevant to this appeal, a real party in interest under Civ.R. 17(A) includes "a party with whom or in whose name a contract has been made for the benefit of another" or "a party authorized by statute." Civ.R. 17(A) further provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed *after objection* for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

"'Because compliance with Civ.R. 17 is not necessary to invoke the jurisdiction of the court, the failure to name the real party in interest is an objection or defense to a claim that is waived if not timely asserted.'" *Milton* at ¶ 27, quoting *State ex rel. Browning v. Browning*, 2012-Ohio-2158, ¶ 39 (5th Dist.); *Hang-Fu v. Halle Homes,*

*Inc.*, 2000 Ohio App. LEXIS 3625, *21 (8th Dist. Aug. 10, 2000) ("[T]he defense that the plaintiff is not the real party in interest is an affirmative defense and, therefore, must be specifically pled or it is waived."); Civ.R. 8(C).

{¶ 22} Our review of the record reveals that Ford generally denied the allegations of the complaint in her answer and asserted statute of frauds as her sole affirmative defense. Ford's answer did not include lack-of-capacity-to-sue or real-party-in-interest defenses. Nor did Ford seek to amend her answer to preserve those defenses. Therefore, Ford waived any lack-of-capacity or real-party-in-interest defenses and cannot subsequently raise them, even under the guise of standing. Accordingly, we overrule Ford's sole assignment of error.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR